[No. 25453-4-III.   Division Three.   August 30, 2007.]

MARK DAVIS, *Appellant*, v. WEST ONE AUTOMOTIVE GROUP, *Respondent*.

450

*George Fearing*, for appellant.

*Dan'L W. Bridges* and *Justin E. Bolster* (of *McGaughey, Bridges, Dunlap, PLLC*), for respondent.

¶1 STEPHENS, J. — Mark Davis worked for West One Automotive Group from February 2005 until July 2005. After he was terminated, he brought this action under Washington's Law Against Discrimination (WLAD), chapter 49.60 RCW, alleging hostile work environment, disparate treatment, and retaliatory discharge. The trial court granted West One's motion for summary judgment dismissal. Mr. Davis appeals. Because there are disputed issues of material fact, summary judgment was not proper and we reverse and remand for further proceedings.

## FACTS

¶2 The facts as adduced on summary judgment are set forth here in a light most favorable to the nonmoving party.

*See Marquis v. City of Spokane*, 130 Wn.2d 97, 105, 922 P.2d 43 (1996).

¶3 Mark Davis, an African American, was hired as a salesman for West One in February 2005 and terminated in July 2005. During the course of his five-month employment, Mr. Davis experienced racially charged comments in the workplace. On one occasion, West One Manager Dan Willard, Mr. Davis's supervisor, asked Mr. Davis if he knew "why blacks have a day off on Martin Luther King Day?" Clerk's Papers (CP) at 52-53. When Mr. Davis said he did not know, Mr. Willard responded, "Because they shot and killed his black ass." CP at 53. Mr. Davis told Mr. Willard the comment was inappropriate and not to make such a comment again. Another time, Mr. Willard stated, "Blacks on the eastside, Mexicans on the west; hell I don't know." CP at 53. Mr. Davis was offended and told Mr. Willard so. A third incident involved Mr. Willard walking by Mr. Davis's desk, kicking it, and remarking, "What's up, bitch." CP at 53. Mr. Davis was offended, regarding "bitch" as a derogatory term some African American men use to refer to each other. Mr. Davis again told Mr. Willard he was offended.

¶4 Fellow sales employee Joe Klein also made comments that Mr. Davis found racially offensive. On an occasion when Mr. Davis had customers in the finance office and his telephone rang, Mr. Klein stopped him from answering, stating, "Hey, Buckwheat, you can't get that call." CP at 53. Mr. Davis was offended and asked Mr. Klein to refer to him by name. One day after Mr. Davis had sold a car to a woman who worked with his wife and whose husband had previously bought a car from Mr. Klein, Mr. Klein grew angry and stated, "if you're going to be here at West One Automotive Group, you need to do things our way." CP at 53. Another time, some customers arrived to see Mr. Davis and Mr. Klein told him he had "black people" waiting for him. CP at 54. Mr. Davis was offended, noting he did not refer to Mr. Klein's customers as "white people." CP at 54.

¶5 Mr. Davis complained to West One human resources about Mr. Klein's "Buckwheat" comment. No disciplinary action was taken. At a subsequent staff meeting, Mr. Willard discussed generally with the entire staff that "no use of any type of insensitive name, nickname or not, would be tolerated." CP at 78. Because no action had been taken against Mr. Klein and because he regarded Mr. Willard as "the worst offender of racial discrimination," Mr. Davis did not complain again. CP at 54.

¶6 In June 2005, Mr. Davis was salesman of the month. Per customary practice, this honor entitled him to drive any vehicle on the lot for the month, enjoy free gasoline, and have his picture in the newspaper. Due to an error, Mr. Davis's picture was not put in the paper; instead, another salesman was pictured and identified as salesman of the month. When Mr. Davis discovered the error and brought it to West One's attention, West One refused to place a corrected photo in the newspaper.

¶7 As salesman of the month, Mr. Davis chose to drive a Bavarian Motor Works (BMW) vehicle and began using it on a Saturday. On Sunday, Mr. Willard told Mr. Davis that the BMW needed to be returned for service. Mr. Davis believed this was not true and the car had already been serviced, so he drove the car home. Mr. Davis called in ill on Monday and asked to speak to Mr. Willard. When Mr. Willard did not respond to his page, he asked the receptionist to tell Mr. Willard he was sick. Approximately two days later, Mr. Davis returned to West One, driving the BMW. When he returned, he was terminated.

¶8 Mr. Davis brought this action under WLAD, chapter 49.60 RCW, alleging hostile work environment, disparate treatment, and retaliatory discharge. West One moved for summary judgment dismissal.

¶9 In support of its motion, West One submitted two declarations of counsel, attaching various documents, extracts of Mark Davis's deposition and declarations of Dan

Willard, Joe Klein, and other West One employees.[1] West One employees stated that Mr. Davis was habitually late to work, missed shifts or left during shifts, and was reluctant to assist in tasks expected of the sales staff. With respect to the particular discriminatory statements identified by Mr. Davis, neither Mr. Willard nor Mr. Klein denied making the statements at issue. Mr. Klein explained that he did not consider "Buckwheat" to be a racially charged moniker and did not intend to offend Mr. Davis. Mr. Willard offered that his reasons for terminating Mr. Davis were his ongoing unreliability and, most importantly, his failure to return the BMW for several days despite having been asked to do so. None of the West One employee declarations addressed the issue of Mr. Davis not being recognized in the newspaper as salesman of the month. Mr. Davis stated at his deposition that he believed the error was initially a "screwup." CP at 11. Once he discovered the error and brought it to West One's attention, he was recognized as salesman of the month but West One refused to place his picture in the paper.

---

[1] It is doubtful that West One's counsel's unsworn declarations properly placed evidence before the trial court on summary judgment, as required under CR 56(e). While an unsworn declaration may substitute for an affidavit, it must meet the explicit requirements of RCW 9A.72.085. GR 13(a). Neither the declarations nor the unsworn declarations of West One employees attached to the declarations meet these requirements. Further, counsel's declarations do not establish any first-hand knowledge of the documents attached as exhibits. *Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co.*, 122 Wn. App. 736, 745-48, 87 P.3d 774 (2004) (noting authentication by attorney requires showing of firsthand knowledge or that documents were provided through discovery), *review denied*, 153 Wn.2d 1016 (2005). On summary judgment, the court is allowed to consider only competent evidence. *King County Fire Prot. Dist. No. 16 v. Hous. Auth.*, 123 Wn.2d 819, 826, 872 P.2d 516 (1994). Accordingly, we have refused to consider improper evidence in reviewing an order on summary judgment, notwithstanding the opposing party's failure to object. *See Wilkerson v. Wegner*, 58 Wn. App. 404, 408 n.3, 793 P.2d 983 (1990). On the other hand, we have sometimes indicated that we will not determine the sufficiency of evidence submitted on summary judgment where the opposing party did not move to strike the inadmissible evidence in the trial court. *Burbo v. Harley C. Douglass, Inc.*, 125 Wn. App. 684, 692, 106 P.3d 258, *review denied*, 155 Wn.2d 1026 (2005). At any rate, we need not resolve this matter on the basis of the inadequacy of the declarations submitted. We conclude that, even had the declarations been properly submitted to the trial court, West One has failed to demonstrate the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. CR 56(c).

¶10 The trial court granted West One's motion for summary judgment dismissing all claims. This appeal followed.

## ANALYSIS

■ ¶11 We review orders of summary judgment dismissal de novo, engaging in the same inquiry as the trial court. *Korslund v. DynCorp Tri-Cities Servs., Inc.*, 156 Wn.2d 168, 177, 125 P.3d 119 (2005); RAP 9.12. Summary judgment is appropriate only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." CR 56(c). The court must consider the facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party. *Marquis*, 130 Wn.2d at 105; *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993). The purpose of summary judgment, after all, is to avoid a " 'useless trial.' " *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 349, 588 P.2d 1346 (1979) (quoting *Balise v. Underwood*, 62 Wn.2d 195, 199, 381 P.2d 966 (1963)).

■ ¶12 In order to overcome a motion for summary judgment, a plaintiff in a discrimination case must establish specific and material facts to support each element of a prima facie case. *Marquis*, 130 Wn.2d at 105. Questions of fact can be determined as a matter of law only where reasonable minds can reach but one conclusion. *Sherman v. State*, 128 Wn.2d 164, 184, 905 P.2d 355 (1995). Summary judgment in favor of the employer in a discrimination case is often inappropriate because the evidence will generally contain reasonable but competing inferences of both discrimination and nondiscrimination that must be resolved by a jury. *Kuyper v. Dep't of Wildlife*, 79 Wn. App. 732, 739, 904 P.2d 793 (1995), *review denied*, 129 Wn.2d 1011 (1996).

A. Hostile Work Environment

■ ¶13 RCW 49.60.180(3) prohibits an employer from discriminating against an employee "in other terms or

conditions of employment because of . . . race." Mr. Davis alleges that West One created a hostile work environment affecting the terms and conditions of his employment. To establish a prima facie case, he must show that he suffered harassment (1) that was unwelcome, (2) because he was a member of a protected class, (3) that affected the terms and conditions of his employment, and (4) that was imputable to the employer. *Antonius v. King County*, 153 Wn.2d 256, 261, 103 P.3d 729 (2004) (citing *Glasgow v. Ga.-Pac. Corp.*, 103 Wn.2d 401, 406-07, 693 P.2d 708 (1985)); *see also Clarke v. Office of Attorney Gen.*, 133 Wn. App. 767, 785, 138 P.3d 144 (2006), *review denied*, 160 Wn.2d 1006 (2007). Conduct is unwelcome if the plaintiff did not solicit or incite it. *Glasgow*, 103 Wn.2d at 406.

¶14 The record on summary judgment provides ample evidence to sustain the first and second elements. Mr. Davis testified at deposition and by affidavit that he was subjected to racially derogatory comments, which he did not welcome and which he found offensive. While West One argues that certain comments, however offensive to Mr. Davis, were not racially motivated, this cannot be determined as a matter of law. Reasonable minds could find that Mr. Willard's statements regarding Dr. Martin Luther King, Jr., were racially charged and not merely "odd" as West One suggests. A jury could also find that calling an African American man a "bitch" has racial overtones, as understood by Mr. Davis. We reject West One's invitation to take "judicial notice" that such a term has no racial connotation but is invariably a gender-based term. *See* Resp't's Br. at 30.

¶15 The third element requires that the harassment be sufficiently pervasive as to alter the conditions of employment and create an abusive working environment. *Glasgow*, 103 Wn.2d at 406. Whether the comments here affected the conditions of Mr. Davis's employment is a question of fact. Mr. Davis asserts he was humiliated by these comments. He claims emotional distress. The record shows Mr. Davis was often late and absent from work. There was friction between him and other employees. When

he called in ill a few days before his termination, Mr. Davis testified that he was "[p]robably mentally sick, drained." CP at 134. An inference could be drawn that this was the result of the hostile work environment.

¶16 To determine whether West One's conduct was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment, we look at the totality of the circumstances. *Adams v. Able Bldg. Supply, Inc.*, 114 Wn. App. 291, 296, 57 P.3d 280 (2002). Looking at all the evidence in the light most favorable to Mr. Davis, as required, we conclude he had raised a question of fact with regard to the third element of this claim.

¶17 To establish the fourth element, Mr. Davis must show West One knew or should have known of the comments and failed to take reasonable corrective action to end the harassment. *Francom v. Costco Wholesale Corp.*, 98 Wn. App. 845, 853-54, 991 P.2d 1182, *review denied*, 141 Wn.2d 1017 (2000); *Campbell v. State*, 129 Wn. App. 10, 20, 118 P.3d 888 (2005), *review denied*, 157 Wn.2d 1002 (2006).

¶18 Mr. Davis reported the "Buckwheat" comment by Mr. Klein. He was not required to report the comments by Mr. Willard, as Mr. Willard was his supervisor. The comments occurred openly in the workplace. West One did respond to the one comment Mr. Davis reported by telling all staff during a general staff meeting that use of insensitive names would not be tolerated. Whether this was sufficient to end the harassment is a question of fact. *See Campbell*, 129 Wn. App. at 20.

¶19 Given the numerous factual issues surrounding Mr. Davis's hostile work environment claim, we reverse the superior court's order granting summary judgment dismissal.

B. DISPARATE TREATMENT

¶20 Mr. Davis next claims the court erred in dismissing his claim of disparate treatment. To establish a

prima facie case of racial discrimination based on disparate treatment, an employee must show that (1) the employee belongs to a protected class and that (2) the employer treated the employee less favorably in the terms or conditions of employment (3) than a similarly situated, nonprotected employee (4) who does substantially the same work. *Washington v. Boeing Co.*, 105 Wn. App. 1, 13, 19 P.3d 1041 (2000) (quoting *Johnson v. Dep't of Soc. & Health Servs.*, 80 Wn. App. 212, 227, 907 P.2d 1223 (1996)).

¶21 Mr. Davis alleges three specific instances of disparate treatment. First, he claims his picture was not put in the paper when he was salesman of the month, as was custom. West One claims this was a mistake. Mr. Davis testified that when he brought the mistake to West One's attention, it refused to correct the error by placing his picture in the paper. Whether West One's actions were a mere mistake or support a claim of disparate treatment is a disputed question of fact.

¶22 Mr. Davis next alleges he was treated less favorably than other similarly situated employees because he was not permitted to drive any car he wanted as salesman of the month, though Mr. Klein was always permitted to do so. When Mr. Davis was salesman of the month, he elected to drive a BMW. When he took the BMW, he was told to return it for service. There is a factual dispute about whether service was necessary. This dispute presents a question of fact for a jury.

¶23 Mr. Davis claims he was held to a higher standard than other employees; he was disciplined more harshly for missing work and being late than were his co-workers. West One disputes this claim. There is conflicting evidence as to the tardiness and truancy of Mr. Davis and other employees, and as to West One's tolerance, or not, of this behavior. On this record, summary judgment was not appropriate.

¶24 We reverse the superior court's order granting summary judgment dismissal of Mr. Davis's disparate treatment claim.

C. RETALIATORY DISCHARGE

■ ¶25 Finally, Mr. Davis argues the court erred in dismissing his retaliation claim. " 'It is an unfair practice for any employer . . . to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter.' " *Kahn v. Salerno*, 90 Wn. App. 110, 128, 951 P.2d 321 (alteration in original) (quoting RCW 49.60.210(1)), *review denied*, 136 Wn.2d 1016 (1998). An employer need only be motivated in part by retaliatory influences when discharging an employee engaged in protected activity to violate the statute. *Id.*

■ ¶26 In order to establish a prima facie case of retaliatory discharge, Mr. Davis must show (1) he engaged in a statutorily protected activity, (2) he was discharged or had some adverse employment action taken against him, and (3) retaliation was a substantial motive behind the adverse employment action. *Campbell*, 129 Wn. App. at 22-23.

■ ¶27 Mr. Davis claims he was fired for reporting the hostile work environment. This is a protected activity covered by statute, and his termination qualifies as an adverse employment action. *Id.* at 22. It is unclear if retaliation was a substantial motive behind the termination. The evidence presented at summary judgment would support a finding either way on the causation issue. This is a jury question.

■ ¶28 Because Mr. Davis established a prima facie case of retaliation, the burden shifted to West One to present admissible evidence of its legitimate reason for the discharge. *Renz v. Spokane Eye Clinic, PS*, 114 Wn. App. 611, 618, 60 P.3d 106 (2002). West One presented testimony that it terminated Mr. Davis because he refused to return the BMW as requested. Mr. Davis admitted that he knew West One had asked he return the vehicle but that he kept the car for several days and believed West One's explanation that the car needed service was false. He was termi-

nated immediately upon returning to work with the vehicle. Neither party offers any evidence of service records.

¶29 Viewing the evidence in a light most favorable to Mr. Davis, as we must on summary judgment, we conclude that Mr. Davis has presented facts that raise a genuine issue of material fact whether West One's proffered reason for his termination was a pretext. *Id.* at 619. Summary judgment dismissal of Mr. Davis's retaliation claim was not appropriate.

## CONCLUSION

¶30 This case serves to remind us of our Supreme Court's observation in *Balise*: "The object and function of the summary judgment procedure is to avoid a useless trial; however, a trial is not useless, but is absolutely necessary where there is a genuine issue as to any material fact." *Balise*, 62 Wn.2d at 199. Because there are numerous disputed issues of material fact regarding Mr. Davis's claims under the WLAD, we reverse the superior court's order granting summary judgment dismissal and remand for further proceedings.

SCHULTHEIS, A.C.J., and BROWN, J., concur.

Review denied at 163 Wn.2d 1040 (2008).