# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DONALD BROWNELL,

              Appellant,

v.

SNOHOMISH COUNTY PUBLIC
UTILITY DISTRICT NO. 1,

              Respondent.

No. 71269-1-I

DIVISION ONE

UNPUBLISHED

FILED: May 18, 2015

2015 MAY 18 AM 9: 16
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

Cox, J. — Donald Brownell appeals the trial court's grant of summary judgment to the Snohomish County Public Utility District ("PUD") on his claims of discrimination based on disability. Because he raised genuine issues of material fact in response to the PUD's motion, we reverse.

We recount the facts in the light most favorable to Brownell. Brownell worked for the PUD for several years, including eight years as a Hydro-Electric Operator. Brownell's job involved operating and maintaining equipment in a system of dams. Some of his duties required physical labor.

During his employment, Brownell was diagnosed with three disabilities. In 1990, he was diagnosed with Myasthenia Gravis, "a neurological disease which causes sporadic but progressive weakness and abnormal fatiguing of skeletal muscles."[1] In 2002, Brownell severely injured his right arm in a chainsaw

---

[1] Clerk's Papers at 196.

accident, which left him with "continued and increased weakness" in his right hand.[2] Finally, in 2005, Brownell was diagnosed with hearing loss.

After Brownell recovered from his chainsaw accident, his doctor cleared him to return to his job and perform all duties. But the PUD still decided to limit some of his physical duties. Despite these limitations, his immediate supervisor frequently assigned him labor intensive work. The supervisor also responded with "sarcasm and criticism" when Brownell was unable to complete the work as quickly as his supervisor wished.[3] For example, when Brownell took a break from operating a jackhammer, his supervisor said, "Are you too weak for the job? Go work on it."[4]

Brownell received several written warnings during his time as an employee and was once suspended for four days. In 2010, he was discharged after he accidentally "dewater[ed]" part of a stream when operating a dam.[5] His termination notice, dated September 30, 2010, cited this incident as well as an "ongoing pattern of poor performance and lack of good judgment" as grounds for termination.[6]

Following his discharge, Brownell commenced this action. He alleged discrimination based on disability and age together with wrongful discharge in

---

[2] Id. at 197.

[3] Id.

[4] Id. at 198.

[5] Id. at 390.

[6] Id. at 390.

2

violation of public policy. After the PUD moved for summary judgment, Brownell abandoned all of these claims except for his disability discrimination claim. Thereafter, the trial court granted summary judgment of dismissal.

Brownell appeals.

## SUMMARY JUDGEMENT

Brownell argues that the trial court erred by granting summary judgment to the PUD. Because he shows there are genuine issues of material fact regarding his prima facie case and pretext, we agree.

We review de novo the grant of summary judgment.[7] This court affirms summary judgment if "there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."[8] When reviewing a summary judgment decision, we look at the facts in the light most favorable to the non-moving party.[9]

Washington prohibits employers from discriminating against employees due to disabilities.[10] There are two distinct claims for discrimination based on disability—failure to accommodate and disparate treatment.[11] Here, Brownell alleges only disparate treatment discrimination.

---

[7] Camicia v. Howard S. Wright Const. Co., 179 Wn.2d 684, 693, 317 P.3d 987 (2014).

[8] Id.

[9] Id. at 687-88.

[10] RCW 49.60.180.

[11] Riehl v. Foodmaker, Inc., 152 Wn.2d 138, 145, 94 P.3d 930 (2004).

Plaintiffs can prove discrimination with either direct or indirect evidence.[12] When plaintiffs use indirect evidence, we analyze summary judgment motions under a burden-shifting framework.[13] This framework was first articulated by the United States Supreme Court in McDonnell Douglas Corp. v. Green.[14]

Under this framework, the plaintiff must initially establish a prima facie case of discrimination to survive summary judgment.[15] If the plaintiff establishes a prima facie case, then the defendant must "articulate a legitimate, nondiscriminatory reason for the adverse employment action."[16] If the employer meets this burden, the plaintiff must then produce sufficient evidence showing that the employer's nondiscriminatory reason is a pretext.[17] "Evidence is sufficient to overcome summary judgment if it creates a genuine issue of material fact that the employer's articulated reason was a pretext for a discriminatory purpose."[18]

But this framework is also flexible. Washington's supreme court has noted that the McDonnell Douglas framework is not "'a format into which all cases of

---

[12] Scrivener v. Clark Coll., 181 Wn.2d 439, 445, 334 P.3d 541 (2014).

[13] Id.

[14] 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

[15] Scrivener, 181 Wn.2d at 446.

[16] Id.

[17] Id.

[18] Id.

discrimination must somehow fit.'"[19] Because the facts in employment discrimination cases vary, the McDonnell Douglas prima facie framework "'[does] not necessarily appl[y] in every respect to differing factual situations.'"[20]

Courts rarely grant summary judgment in discrimination cases.[21] This is because evidence in discrimination cases "'generally contain[s] reasonable but competing inferences of both discrimination and nondiscrimination that must be resolved by a jury.'"[22] Additionally, "because of the difficulty of proving a discriminatory motivation," summary judgment in favor of an employer is "seldom appropriate."[23]

As we read the summary judgment order, the trial court likely granted summary judgment on one or two possible bases. First, the court could have concluded that Brownell failed to establish a prima facie case of discrimination. Second, the court could have concluded that although Brownell established a prima facie case, the PUD articulated a non-discriminatory reason for discharging him. Further, the court could have also decided that Brownell failed to raise a

---

[19] Grimwood v. Univ. of Puget Sound, 110 Wn.2d 355, 363, 753 P.2d 517 (1988) (quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1016-17 (1st Cir. 1979)).

[20] Hill v. BCTI Income Fund-I, 144 Wn.2d 172, 181 n.2, 23 P.3d 440 (2001) (quoting McDonnell Douglas, 411 U.S. at 802 n.13), overruled on other grounds by McClarty v. Totem Elec., 157 Wn.2d 214, 137 P.3d 844 (2006).

[21] Scrivener, 181 Wn.2d at 445.

[22] Johnson v. Chevron U.S.A., Inc., 159 Wn. App. 18, 27, 244 P.3d 438 (2010) (quoting Davis v. West One Automotive Group, 140 Wn. App. 449, 456, 166 P.3d 807 (2007)).

[23] Scrivener, 181 Wn.2d at 445.

genuine issue of material fact whether this reason was pretextual. Neither basis is correct.

*Prima Facie Case*

Brownell argues that he established a prima facie case of discrimination. We agree.

"'The elements of a prima facie case of disparate treatment disability discrimination are that the employee was: [(1)] disabled, [(2)] subject to an adverse employment action, [(3)] doing satisfactory work, and [(4)] discharged under circumstances that raise a reasonable inference of unlawful discrimination.'"[24]

Here, the PUD does not dispute that Brownell was disabled and suffered an adverse action. Thus, the first two elements are satisfied. And the PUD does not dispute that it replaced Brownell with a non-disabled employee, which satisfies the fourth element.[25] Thus, the only question is whether Brownell alleged sufficient facts showing he was doing satisfactory work in order to satisfy the third element.

Brownell showed some facts suggesting that his work was satisfactory. His eight years of employment as a Hydro-Electric Operator is among this evidence. Brownell also declared that his performance was similar to his

---

[24] Brownfield v. City of Yakima, 178 Wn. App. 850, 873, 316 P.3d 520 (2014) (alterations in original) (quoting Callahan v. Walla Walla Hous. Auth., 126 Wn. App. 812, 819-20, 110 P.3d 782 (2005)).

[25] Callahan, 126 Wn. App. at 820 n.1.

6

coworkers' and that discipline he received was the result of selective enforcement.

Generally, an employee cannot establish satisfactory work by disagreeing with his employer's evaluation of his work.[26] In Chen v. State, Hsi Chen attempted to establish a prima facie case of discrimination with his own reviews of his performance.[27] He disputed the negative performance reviews he received, offering explanations for his conduct.[28] Division Two of this court held that Chen had failed to establish that he was doing satisfactory work.[29]

But Chen is distinguishable from the present case in one important aspect. The court in Chen noted "[I]mportantly, nothing in Chen's explanations offers even a hint that the State's reasons for his termination were either false or merely pretexts."[30] Instead, Chen simply disagreed with the evaluation of his work.[31] In contrast, Brownell argues that he was disciplined and terminated because of his disability. Brownell alleges that the PUD selectively enforced its rules against him.

Evidence of selective enforcement can help a plaintiff establish satisfactory work. In Cooper v. Asplundh Tree Expert Co., the Tenth Circuit

---

[26] Chen v. State, 86 Wn. App. 183, 190-91, 937 P.2d 612 (1997).

[27] Id. at 191.

[28] Id.

[29] Id.

[30] Id.

[31] Id.

addressed the satisfactory work element of a prima facie case under the McDonnell Douglas framework.[32] In that case, Joe Cooper was terminated after he violated several company rules.[33] Cooper did not dispute that he had violated the rules.[34] But he also presented evidence that his employer selectively enforced these rules against him.[35] The Tenth Circuit held that he had met the satisfactory work element of a prima facie case.[36]

Cooper is instructive. Here, like in Cooper, it is undisputed that the employee violated several rules. And, as in Cooper, Brownell alleges that the discipline was pretextual—other employees were not disciplined for similar violations.

Additionally, Brownell's theory of the case makes it more difficult for him to allege objective facts about his satisfactory work. Brownell argues that his supervisor discriminated against him by selectively enforcing rules. He argues that while other employees committed similar infractions, they received no discipline. Thus, Brownell cannot use the content of his disciplinary record as evidence of his satisfactory work.

It is difficult to see how Brownell could have presented more evidence that his work was satisfactory. While Brownell's immediate supervisor kept some

---

[32] 836 F.2d 1544, 1547 (10th Cir. 1988).

[33] Id.

[34] Id.

[35] Id. at 1547-48.

[36] Id. at 1548.

notes on Brownell and other employees in his "manager's file," the supervisor destroyed the notes on Brownell after he was terminated. Furthermore, the PUD does not conduct performance reviews of its union employees.

Given Brownell's theory of the case, and the fact that no performance reviews exist, this case does not fit neatly into the McDonnell Douglas framework.

Finally, we note that courts rarely grant summary judgment to employers in discrimination cases.[37] Courts recognize the difficulty that plaintiffs face in proving discriminatory intent.[38] And the difficulty is particularly great in cases like this, where employees allege that they were disciplined as a pretext.

Accordingly, for all of these reasons, we conclude that Brownell established a prima facie case.

At oral argument for this case, the PUD attempted to distinguish Cooper with DeGrazia v. Ermanco, Inc.,[39] which it submitted as a supplemental authority. In that opinion, the Western District of Michigan distinguishes Cooper.[40] But that court distinguished Cooper when analyzing pretext—not when analyzing the plaintiff's prima facie case.[41] The court held that the plaintiff had established a

---

[37] Scrivener, 181 Wn.2d at 445.

[38] Id.

[39] 1991 WL 427926 (W.D. Mich. July 23, 1991), aff'd, 961 F.2d 1576 (6th Cir. 1992).

[40] Id. at *5.

[41] Id. at *5-*6.

prima facie case, noting that "establishing a prima facie case of discrimination is not meant to be onerous."[42] Thus, DeGrazia is not helpful to the precise question we just discussed—whether there is a prima facie showing of discrimination.

The PUD argues that Brownell has not alleged enough facts to show that he was selectively disciplined. It points out that Brownell admitted he lacked personal knowledge about the discipline other employees received. But the PUD's answer to a request for production confirms that no other employees from Brownell's workplace were formally disciplined while he was a Hydro-Electric Operator. Thus, his lack of personal knowledge is not material.

The PUD also argues that Brownell failed to allege facts showing the fourth element—that Brownell was "discharged under circumstances that raise a reasonable inference of unlawful discrimination."[43] But the PUD is mistaken about this element.

Generally, when a plaintiff alleges discrimination through disparate treatment, a prima facie case requires showing that the plaintiff: "(1) belongs in a protected class; (2) was discharged; (3) was doing satisfactory work; and (4) was replaced by someone not in the protected class."[44]

But when a plaintiff alleges disparate treatment because of disability, the analysis differs slightly. Courts replace the test's fourth factor with "discharged

---

[42] Id. at *4.

[43] Brownfield, 178 Wn. App. at 873 (quoting Callahan, 126 Wn. App. at 819-20).

[44] Chen, 86 Wn. App. at 189.

10

under circumstances that raise a reasonable inference of unlawful discrimination."[45]

This change makes it easier, not harder, for a plaintiff to establish a prima facie case. When Division Three adopted this change, it noted that disability is different from other protected classes:

> Replacement by a person outside the protected class is relevant when one member of the class is much like another. But disabilities differ widely. Replacing a plaintiff who has a burdensome disability with a person less inconveniently disabled does not eliminate the possibility that the disability was a substantial factor.[46]

Thus, when a disabled employee is replaced with a non-disabled employee, it is sufficient, though not necessary, to raise the inference of discrimination. This change in elements merely allows a plaintiff to establish a prima facie case even when replaced by an employee with a disability. But when an employee without disabilities replaces a disabled employee, there is no reason to treat disability differently than other protected classes. Thus, we agree with Division Three in this respect.

Here, the PUD does not dispute that it replaced Brownell with an employee without disabilities. Accordingly, Brownell established that he was "discharged under circumstances that raise a reasonable inference of unlawful discrimination."[47]

_____

[45] Brownfield, 178 Wn. App. at 873 (quoting Callahan, 126 Wn. App. at 819-20).

[46] Callahan, 126 Wn. App. at 820 n.1.

[47] Brownfield, 178 Wn. App. at 873.

11

*Pretext*

Brownell argues that he raised a genuine issue of material fact whether the PUD's stated reason for firing him was a pretext. We agree.

Brownell does not dispute that the PUD met its burden of producing a non-discriminatory reason for discharging him. The PUD claims that it discharged Brownell because of an "ongoing pattern of poor performance and lack of good judgment."[48] Thus, the question is whether Brownell raised sufficient evidence to create a genuine issue of material fact that this reason was pretextual.

"An employee may satisfy the pretext prong by offering sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is pretextual or (2) that although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer."[49] "A 'substantial factor' means that the protected characteristic was a significant motivating factor bringing about the employer's decision," but it does not have to be the only factor.[50] "This is a burden of production, not persuasion, and may be proved through direct or circumstantial evidence."[51]

Here, Brownell raised a genuine issue of material fact whether the PUD's reason was pretextual, or, even if it was legitimate, that his disability was still a substantial factor.

---

[48] Clerk's Paper at 390.

[49] Scrivener, 181 Wn.2d at 446-47.

[50] Id. at 444.

[51] Riehl, 152 Wn.2d at 149.

Brownell argues that his supervisor acted with discriminatory intent. Brownell's evidence, when taken in the light most favorable to him, supports this proposition.

After Brownell returned to work following his chainsaw accident, the PUD decided to limit some of his physical duties. Brownell was not required to operate snowmobiles or chainsaws and was allowed to seek assistance from other employees when he needed to go to places that were difficult to access. He was also not required to operate a crane, which necessitated climbing a long metal ladder.

But Brownell's immediate supervisor frequently assigned Brownell physical tasks, including operating the crane. Brownell's supervisor also responded with "sarcasm and criticism" when Brownell did not accomplish the tasks quickly.[52] For example, when Brownell took a break from breaking concrete with a jackhammer, his supervisor saw him and said, "Are you too weak for the job? Go work on it."[53] Brownell also described several other instances when his supervisor would comment on Brownell's "weakness."[54]

Brownell never requested an accommodation to avoid these tasks. But his supervisor's behavior raises a question whether Brownell's disability was a substantial factor in the decision to terminate him.

---

[52] Clerk's Papers at 197.

[53] Id. at 198.

[54] Id. at 198-99.

Brownell's supervisor knew about Brownell's disability. He stated that he believed Brownell was not assigned to tasks such as using chainsaws and snowmobiles because of a doctor's recommendation and decreased arm strength. Furthermore, Brownell's supervisor stated that he was "probably" disappointed in Brownell's physical abilities.[55]

But Brownell's physical abilities were not one of the reasons that the PUD gave when it discharged him. Thus, looking at the evidence in the light most favorable to Brownell, it raises an inference of pretext regarding Brownell's discharge.

Brownell also provided evidence suggesting that he was disproportionately disciplined. He admits that he committed the infractions for which he was disciplined. But Brownell testified by declaration that he saw or learned of other employees committing similar infractions without being disciplined. And the PUD's answer to a request for production confirms that no other employees from Brownell's workplace were formally disciplined while he was a Hydro-Electric Operator. This disproportionate discipline also raises an inference that Brownell's supervisor discriminated against Brownell.

Taking these facts in the light most favorable to Brownell, they raise a genuine question of material fact whether the PUD's reason for discharge was a pretext. They arguably establish that Brownell's supervisor had a discriminatory intent. This intent raises a question whether Brownell's allegedly deficient performance was the result of his supervisor's selective enforcement. It also

---

[55] Id. at 172.

supports the argument that even if Brownell's performance was substandard, his disability still played a substantial factor in the PUD's decision to discharge him.

Thus, because this case contains "'reasonable but competing inferences of both discrimination and nondiscrimination,'" a jury should decide this case.[56] Accordingly, we reverse the order granting summary judgment to the PUD.

The PUD argues that Brownell failed to raise a genuine issue of material fact as to pretext. It argues that Brownell's claims of selective enforcement are insufficient because he lacks personal knowledge of the discipline that other employees received. In essence, this argument is grounded in the requirements of CR 56(e).

Brownell does lack such knowledge. But the PUD's answer to a request for production confirms that no other employees from Brownell's workplace were disciplined while he was a Hydro-Electric Operator. The PUD admitted that only one other employee at Brownell's workplace had been disciplined between 1990 and 2010. And that employee was disciplined in the 1990s, before the relevant events in this case.

Brownell's declaration establishes that other employees committed similar infractions. Thus, the PUD's answer, together with Brownell's knowledge that the infractions occurred, show sufficient, admissible evidence about selective enforcement to raise a genuine issue of material fact.

Additionally, the PUD does not acknowledge that even if its non-discriminatory reason is legitimate, Brownell can still meet his burden by raising a

---

[56] Johnson, 159 Wn. App. at 27 (quoting Davis, 140 Wn. App. at 456).

genuine issue of material fact whether his disability was a substantial factor in the decision to discharge him. Here, the comments by Brownell's supervisor about Brownell's "weakness" create such an issue.

The PUD also argues that the employees it allegedly failed to discipline did not have the same position as Brownell. Thus, the PUD claims that Brownell did not allege facts showing selective enforcement. While it is true that the other employees had somewhat different jobs, this goes to the weight of Brownell's evidence, not its admissibility for summary judgment purposes. Looking at the evidence in the light most favorable to Brownell, it still raises a genuine issue of material fact as to selective enforcement and pretext.

We reverse the order granting summary judgment in favor of the PUD and remand for further proceedings.

Cox, J.

WE CONCUR:

Spearman, C.J.

Dwyer, J.