# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| ROBYN THOMPSON BARNETT,<br><br>Respondent.<br><br>v.<br><br>EXEL INC. d/b/a DHL SUPPLY CHAIN, a<br>foreign corporation; RANDSTAD US, LLC,<br>a foreign corporation; MARCUS HYLTON;<br>and JOHN DOE's 1-5.<br><br>Petitioners. | No.  56107-7-II<br><br><br>UNPUBLISHED OPINION |

PRICE, J. — Randstad US, LLC (Randstad) moved for discretionary review of the superior court's order granting partial summary judgment in favor of Robyn T. Barnett on the issue of respondeat superior.  Randstad is a temporary staffing agency that places employees at other companies.  Barnett was injured in a forklift incident with Randstad's employee, Marcus Hylton, while both were working at an Exel, Inc. (DHL) warehouse.  Randstad argues that the borrowed servant doctrine prevents it from being liable to Barnett under the doctrine of respondeat superior.  Randstad asserts that, at a minimum, there is a question of material fact as to who controlled Hylton while he was working at the warehouse at the time of the incident, which, in turn, makes whether the borrowed servant doctrine applies a question for the jury.

Rejecting Randstad's arguments below, the superior court determined as a matter of law that the doctrine of respondeat superior applied to Randstad. We reverse because there is a genuine issue of material fact about whether the borrowed servant doctrine applies.

FACTS

I. BACKGROUND

This case arises from a forklift injury that occurred at a DHL warehouse in Sumner, Washington. On November 22, 2017, Barnett and Hylton were working at the warehouse. Barnett and Hylton were both operating forklifts, "double-teaming"[1] a container truck to offload appliances. Barnett was injured while double-teaming with Hylton and his forklift.

Barnett and Hylton were both temporary workers assigned to the DHL warehouse at the time of Barnett's injury but were employed through different temporary staffing agencies. Barnett was an employee of ProLogistix. Hylton was an employee of Randstad.

II. CONTRACT AND GUIDELINES

Randstad had a contract with DHL (Randstad/DHL contract) setting forth the policies applicable to its temporary workers assigned to the DHL warehouse.

In the Randstad/DHL contract, Randstad agreed to abide by the American Staffing Association (ASA) Code of Ethics and Good Business Practices. The contract states:

> [Randstad] acknowledges that it has received, and is familiar with the [ASA] Code of Ethics and Good Business Practices . . . . [Randstad] covenants and agrees to abide, and to ensure that all of its employees, affiliates, assigns and subcontractors abide, with the ASA Code of Ethics and Good Business Practices, as it may be changed from time to time."

---

[1] "Double-teaming" is a term used for when two forklifts work together to offload a container. Clerk's Papers at 133.

Clerk's Papers (CP) at 463-64. The ASA Code of Ethics and Good Business Practices, in turn, provides that ASA members "always strive" to

> ascertain that employees are assigned to work sites that are safe, that they understand the nature of the work the client has called for and can perform such work without injury to themselves or others, and that they receive any personal safety training and equipment that may be required.

CP at 163.

> The Randstad/DHL contract also stated:
>
> [DHL] is committed to compliance with all applicable laws and regulations under the Occupational Safety and Health Act [(OSHA)] and its implementing regulations and similar state and local laws and regulations governing workplace safety and training . . . . [Randstad] understands and shares this commitment.
>
> . . . .
>
> [Randstad] will participate with [DHL] in periodic walk-throughs of the Facility to identify Facility-specific hazards or potentially un-safe working conditions.

CP at 462.

OSHA has guidelines for the safety of temporary workers, called the Temporary Worker Initiative (TWI). The TWI is an initiative that "focuses on compliance with safety and health requirements when temporary workers are employed under the joint employment of a staffing agency and a host employer." CP at 354 (boldface omitted). The TWI states, "[T]he staffing agency and host employer should jointly review the task assignments and job hazards that would include the type(s) of powered industrial trucks [(PIT)] workers will operate to identify and eliminate potential safety and health hazards." CP at 355.

III. LAWSUIT AND DISCOVERY

As a result of her injuries, Barnett filed a complaint against Hylton, DHL, and Randstad for general negligence and negligent training and supervision.

During discovery, Randstad propounded requests for admission on Hylton and DHL. Hylton admitted that "Randstad did not direct or supervise [his] duties performed at the [warehouse]." CP at 42. Hylton also admitted that "Randstad did not direct or supervise [his] use and operation of a forklift at the [warehouse]." CP at 42.

In its responses to Randstad's requests for admission, DHL admitted that "Randstad did not direct or supervise the operation of PIT vehicles at the [warehouse]." CP at 52. DHL also admitted that Randstad did not "direct" or "supervise" Mr. Hylton's operation of the forklift that he was operating on the day of the accident and that DHL was "responsible for supervising Mr. Hylton's operation of PIT vehicles at the [warehouse]." CP at 52-53.

Barnett's counsel deposed Michael Summers, who was a representative of Randstad. Summers stated that DHL conducted the day-to-day supervision and direction of Hylton at the DHL warehouse. Summers stated that the temporary employees go to the job site "and they're told how and what to do." CP at 60.

Based on the above evidence, Randstad filed a motion for summary judgment arguing that DHL controlled Hylton's actions during the forklift incident. Randstad argued that because of this control, the borrowed servant doctrine insulated it from liability that might otherwise be imposed under the doctrine of respondeat superior. Barnett opposed Randstad's motion and filed a cross motion for partial summary judgment, arguing that the TWI and the Randstad/DHL contract

4

showed that Randstad exercised at least some control over Hylton such that, as a matter of law, the doctrine of respondeat superior should make Randstad liable to Barnett.

The superior court denied Randstad's motion for summary judgment, but granted Barnett's motion for partial summary judgment. The superior court decided as a matter of law that respondeat superior applied to make Randstad liable to Barnett for any negligence by Hylton. The superior court later denied Randstad's motion for reconsideration.

## IV. MOTION FOR DISCRETIONARY REVIEW

Randstad filed a motion for discretionary review. Citing RAP 2.3(b)(2), our commissioner granted Randstad's motion, deciding the superior court probably erred when it granted Barnett's motion for partial summary judgment on the issue of respondeat superior. On this discretionary review, we solely address whether the superior court erred by granting Barnett's motion for partial summary judgment.[2]

## ANALYSIS

Barnett argues that the doctrine of respondeat superior imposes liability as a matter of law on Randstad. Randstad argues there is, at a minimum, a question of fact as to whether the borrowed servant doctrine applies to insulate it from liability from the actions of Hylton at the DHL warehouse. We agree with Randstad.

---

[2] This court later clarified in its ruling on a motion to modify that the sole decision of the superior court on review before us is its granting of Barnett's motion on respondeat superior; the denial of Randstad's motion for summary judgment is not before us. Order Denying Mot. Modify (Mar. 1, 2022). Because our review is limited to Barnett's motion, we do not decide the question raised below by Randstad—whether the borrowed servant doctrine applies as a matter of law.

We review a superior court's grant of summary judgment de novo. *Vargas v. Inland Washington, LLC*, 194 Wn.2d 720, 728, 452 P.3d 1205 (2019). Summary judgment may be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 287, 481 P.3d 1084 (2021). A genuine issue of material fact exists if reasonable minds could disagree on facts controlling the outcome of the litigation. *Sartin v. Est. of McPike*, 15 Wn. App. 2d 163, 172, 475 P.3d 522 (2020), *review denied*, 196 Wn.2d 1046 (2021). If there is a genuine issue of material fact, an order granting summary judgment must be overturned. *Id.* When determining whether to grant summary judgment, this court views all facts and inferences in the light most favorable to the nonmoving party. *Id.*

Under the doctrine of respondeat superior, employers are vicariously liable for injuries caused by the negligence of their employees. *Brown v. Labor Ready Nw., Inc.*, 113 Wn. App. 643, 646-47, 54 P.3d 166 (2002), *review denied*, 149 Wn.2d 1011 (2003).

An exception to liability under the doctrine of respondeat superior arises from the borrowed servant doctrine. *Id.* at 647. The doctrine applies when "a worker in the general employ and pay of one person [is] loaned or hired to another." *Id.* If the worker undertakes the work of another and is under their control, "the worker becomes the servant of the other for the particular transaction, and the general employer may escape liability for the worker's negligence." *Id.*

The key factor in determining whether the borrowed servant doctrine applies is if the servant was in the exclusive control of the other employer for the transaction. *Id.* at 651; *see also Campbell v. State*, 129 Wn. App. 10, 21, 118 P.3d 888 (2005), *review denied*, 157 Wn.2d 1002 (2006). For the general employer to escape liability, the other employer must have had exclusive

control over the borrowed employee for the transaction that caused the injury. *Wilcox v. Basehore*, 187 Wn.2d 772, 783, 389 P.3d 531 (2017). "Exclusive control is task specific, not topic specific." *Id.* at 786.

Our Supreme Court held that "the borrowed servant doctrine is properly a question for the jury" where exclusive control is a disputed fact. *Id.* at 775; *see also Campbell*, 129 Wn. App. at 21-22 (whether the original employer's control over the employee is sufficient to make the borrowed servant doctrine inapplicable and trigger liability for the original employer is a factual question for the jury to resolve).

Here, Randstad has shown that there is a genuine issue of material fact defeating summary judgment on the issue of respondeat superior. The transaction that caused Barnett's injuries is the forklift incident. Randstad has provided DHL's admissions that, on the day of the incident, DHL was the only employer that directed Hylton's actions with the forklift. Randstad did not have a staff member on-site directing Hylton's actions, and Hylton was under direction of his DHL supervisor. Only Hylton's DHL supervisor directed him for the task of using the forklift. When considering this evidence in the light most favorable to Randstad as the nonmoving party, there is at least a genuine issue of material fact about whether DHL had exclusive control over Hylton during this transaction. Where this issue of control is a question of fact, the borrowed servant doctrine remains a possible defense to respondeat superior liability for Randstad.

Barnett argues against this conclusion by pointing to the TWI and the Randstad/DHL contract, asserting that both show, as a matter of law, that Randstad had at least some control over Hylton's safety at the DHL worksite.

However, even assuming these documents show that Randstad contractually had control generally over the topic of safety of the work conditions of its employees, including Hylton, control in this context must be exercised over the specific task that is being performed. *See Wilcox*, 187 Wn.2d at 786. The Randstad/DHL contract and TWI do not speak to, impose, or provide any control over Hylton while he was engaging in this specific task—operating this forklift during the incident. Thus, we determine that these documents fall short of proving the *absence* of a material fact on the issue of control for the purposes of the borrowed servant doctrine. *See Sartin*, 15 Wn. App. 2d at 172 (the moving party first bears the burden of showing the absence of a genuine issue of material fact).

## CONCLUSION

Although we do not decide whether the borrowed servant doctrine applies to protect Randstad as a matter of law, we hold that there is a genuine issue of material fact on its application. Accordingly, Barnett is not entitled to partial summary judgment on the issue of respondeat superior. We reverse.

No. 56107-7-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

GLASGOW, C.J.

LEE, J.