[No. 24966–5–I.   Division One.   August 6, 1990.]

ROBERT J. KESSLER, *Appellant,* v. SWEDISH HOSPITAL
MEDICAL CENTER, *Respondent.*

*Thomas M. Geisness,* for appellant.

*David Gross, Rose Connors,* and *Helsell, Fetterman, Martin, Todd & Hokanson,* for respondent.

FORREST, J.—Robert J. Kessler appeals from the trial court's grant of summary judgment to Swedish Hospital Medical Center and from the court's denial of his motion for reconsideration. We affirm.

Robert Kessler was an employee of Pacific Window Cleaning Company. Pacific Window had the contract with Swedish Hospital Medical Center (Swedish Hospital) to wash the windows on the Heath Medical Building, which Swedish Hospital owned. Kessler had washed the windows of this building approximately four times a year since 1970. On January 8, 1987, Kessler fell from the ninth story of the building to an adjoining roof while cleaning the exterior windows from a ladder placed on the outside ledge. He could remember nothing about the fall or its cause.

Although the windows on the third and fourth floors of the Heath Medical Building were sealed shut or opened only slightly, the remaining windows swiveled vertically to permit access to the exterior surface from within the building. At the time the building was planned, the hospital expressed in general terms its desire that the windows be designed to be cleaned from the inside. The unrebutted affidavit of the architect who designed the building stated that the windows swiveled vertically and were meant to be cleaned by a person while standing on the floor inside the building or on an 18–inch stepladder within the building.

Kessler testified that he had begun using a ladder placed on the building's outside ledge to wash its windows 6 or 8 years prior to the accident. Kessler's employer and uncle, James Kessler, testified that he had repeatedly warned Robert Kessler during that time not to use this technique because it was dangerous.[1] This was confirmed by one of

---

[1] "Q. What was the method that you understood that Bob Kessler used?

"A. He would put a ladder out on the ledge below and come up the ladder.

Kessler's coemployees. Although James Kessler mentioned to Ron Johnson[2] of Swedish Hospital that the windows on the third and fourth floors were permanently sealed and required washing from the outside, no safety concerns were expressed as to washing windows on other floors.

Kessler brought an action against the hospital seeking recovery for his personal injuries. The trial court granted the hospital's motion for summary judgment and denied reconsideration.

This case presents two issues: (1) Did the hospital owe a duty to Kessler under RCW 49.17.060 and former WAC 296–25–545(4)(a)[3] to provide window cleaners' safety anchors on the Heath Medical Building?; and (2) Did the hospital breach its common law duty to invitees under the Restatement (Second) of Torts § 343A?

RCW 49.17.060(2)[4] applies only when a party correctly asserts that an employer failed to comply with a particular safety standard or regulation.[5] Kessler asserts Swedish Hospital violated only WAC 296–25–545(4)(a). An

---

"Q. Did you ever talk to him about that method?
"A. Many times.
"Q. Did you ever tell him that you didn't want him to do it that way?
"A. Absolutely, yes.
"Q. Why did you not want him to clean the windows using that method?
"A. Because I thought it was dangerous."

[2]Kessler has provided no evidence as to Johnson's position and authority within Swedish Hospital. Consequently, there is no basis for imputing knowledge to the hospital.

[3]This regulation has been superseded by WAC 296–24–14507(1).

[4]"Each employer: . . .
"(2) Shall comply with the rules, regulations, and orders promulgated under this chapter."

[5]*Stute v. P.B.M.C., Inc.*, 114 Wn.2d 454, 457–58, 788 P.2d 545 (1990); *Adkins v. Aluminum Co. of Am.*, 110 Wn.2d 128, 152, 750 P.2d 1257, 756 P.2d 142 (1988).

analysis of this regulation, therefore, is dispositive of Kessler's claim under the statute.

Former WAC 296–25–545(4)(a) provided:

> In every building hereafter erected, having windows so constructed that it is usual and/or practicable for a person to stand on the sill in order to clean said window, there shall be installed window cleaner's safety anchors approved by the American Standard Association.

Kessler urges that the spirit and intent of the regulation should prevail over a strict interpretation. However, the undisputed testimony in this case establishes that: (1) the hospital intended the windows to be cleaned from the inside; (2) the architect designed the windows to pivot vertically and to be cleaned from the inside either from the floor or from a short, 18–inch ladder; (3) Kessler's employer and uncle directed him to wash the windows from the inside; (4) for many years Kessler did, in fact, wash the windows from inside the building; (5) Kessler recognized the risk of washing windows from the outside, yet deliberately did so by placing a ladder on the ledge below the windows from which they could be washed.

Under these facts, WAC 296–25–545 does not apply. Its plain language protects those who "stand on the sill" to wash windows. Kessler did not stand on the sill; instead, he stood on a ladder placed on a ledge below the sill. It is clear from the uncontroverted facts as to the design of the windows that it is not usual or practicable to wash the ninth floor windows by standing on the sill. Kessler urges us to interpret the regulation to mean that if it is physically possible to wash the windows from the outside, then window anchors are required. We decline to do so. Even considering the facts most favorably to Kessler, the court did not err in granting summary judgment.[6]

---

[6]See *Baldwin v. Sisters of Providence in Wash., Inc.,* 112 Wn.2d 127, 132, 769 P.2d 298 (1989); *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

678

■ Kessler asserts that even if the hospital did not violate WAC 296–25–545(4)(a), it is liable under the Restatement (Second) of Torts § 343A (1965).[7] This section reads:

> (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Here, Kessler's use of a ladder on the ledge of the ninth floor to wash the windows was dangerous. His employer and uncle, James Kessler, repeatedly warned him about the risks inherent in his chosen technique. The windows on the ninth floor were designed to permit washing from within the building. Kessler has presented no evidence that Swedish Hospital should have anticipated the harm he sustained. The hospital did not owe a duty to Kessler under § 343A.

Moreover, the rule announced in *Tauscher v. Puget Sound Power & Light Co.*[8] also justifies summary judgment. In *Tauscher,* the decedent had been the employee of an independent contractor hired by the utility. He was electrocuted while working within 2 feet of high voltage lines without any protective barriers in violation of safety rules and without adequate supervision. The plaintiff, decedent's mother, brought a wrongful death action against Puget Power alleging that it violated statutory and common law duties it owed to the decedent which proximately caused his death. More specifically, plaintiff contended that Puget Power owed the decedent a nondelegable duty to ensure compliance with safety requirements based on the inherently dangerous nature of decedent's work. The court noted that a party who employs an independent contractor

---

[7]Although Kessler also cites Restatement (Second) of Torts § 343 for support, that section explicitly states that invitees are covered under § 343A. An employee of an independent contractor, as Kessler was, stands in the same relation to the contractee as does a business invitee. *Marsland v. Bullitt Co.,* 3 Wn. App. 286, 292, 474 P.2d 589 (1970).

[8]96 Wn.2d 274, 635 P.2d 426 (1981).

is not liable for injuries to employees of the independent contractor resulting from such contractor's work, and held that "the employer's liability does not extend to employees of independent contractors merely because of the presence of inherently dangerous activities."[9]

The *Tauscher* court did not discuss the applicability of § 343A to an invitee who is the employee of an independent contractor, nor does the Restatement address a landowner's duty to an employee of an independent contractor in this context. In our opinion, however, *Tauscher* limits the liability confronting landowners under § 343A in such cases and is controlling here. As cogently stated in *Tauscher,* it would be an undesirable rule that would insulate a landowner from his own employees' claims under workers' compensation laws, yet make him liable to an independent contractor's employee, who is hired specifically to perform the hazardous work in question.[10] Summary judgment was properly granted.

■ Kessler also contends that Swedish Hospital had a duty to ensure that its architects designed its building windows to be safe. In preparing plans and specifications an architect is, as a matter of law, an independent contractor whose actions are beyond the client's ability to control.[11] Vicarious liability for the acts of an independent contractor arises where the employer controls or has the right to control the contractor's physical movements.[12] Kessler, however, has failed to controvert the statement of the hospital's former executive director that "Swedish Hospital did not recommend any specific details with regard to the window

---

[9]*Tauscher,* at 279; *see Stute,* 114 Wn.2d at 460; *Kelley v. Howard S. Wright Constr. Co.,* 90 Wn.2d 323, 330, 582 P.2d 500 (1978); *Epperly v. Seattle,* 65 Wn.2d 777, 784, 399 P.2d 591 (1965).

[10]*Tauscher,* at 282.

[11]*S.S. Kresge Co. v. Port of Longview,* 18 Wn. App. 805, 813, 573 P.2d 1336 (1977); *McLean v. St. Regis Paper Co.,* 6 Wn. App. 727, 730, 496 P.2d 571 (1972).

[12]*McLean,* at 732.

design or with regard to how the windows would be cleaned." Without more, Kessler has failed to create an issue of fact which would justify trial.

Swedish Hospital argues that summary judgment was appropriate because Kessler assumed the risk and failed to demonstrate proximate cause. It is unnecessary to reach these contentions in view of our holding that WAC 296–25–545(4)(a) is inapplicable and that the hospital had no liability to Kessler for harm from risks integral to the work for which he contracted.

Affirmed.

COLEMAN, C.J., and BAKER, J., concur.