[No. 63285-5. En Banc.]
Argued October 25, 1995. Decided September 5, 1996.

THELMA J. DEWATER, *Appellant*, v. THE STATE OF WASHINGTON, ET AL., *Respondents*.

*Shawn D. Price-Sladich*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Lisa L. Sutton, Assistant*, for respondents.

GUY, J. — The issue in this sexual harassment case is whether the State of Washington is vicariously liable for the discriminatory acts of a foster parent toward a worker hired and supervised by the foster parent but paid by the State. The trial court dismissed the Plaintiff's action on summary judgment. We affirm.

We hold a foster parent is not an "employee" of the State for purposes of the law against discrimination, RCW 49.60; therefore, the State is not vicariously liable for the foster parent's alleged acts of harassment.

## FACTS

Thelma DeWater brought this action for employment discrimination against the State of Washington and John Troyer, a foster parent who allegedly sexually harassed Ms. DeWater during the time she worked in the Troyer foster home.

The viability of Ms. DeWater's claim against Mr. Troyer is not at issue in this appeal.[1] Instead the question is whether the State of Washington is vicariously liable for Mr. Troyer's actions.[2]

In early April 1991, Mr. Troyer applied for a license as a foster parent in order to operate a group foster home for high risk, sexually aggressive teenagers. At that time funds designated for the specialized treatment and placement of sexually aggressive youths had become available under the Community Protection Act, LAWS OF 1990, ch. 3. The funds were to be used to provide specialized social services, including specialized foster care placements,

---

[1]Mr. Troyer has not participated in this appeal, as the issue involves only Ms. DeWater's claim against the State of Washington. The case against Defendant Troyer has been stayed pending resolution of this appeal.

[2]The involvement of the State was through the Department of Social and Health Services' Division of Children and Family Services, as the licensing agency. For ease of reading the general term "State" is used throughout this opinion.

intensive evaluation, and counseling to children identified as being sexually aggressive.

Mr. Troyer was licensed as a foster parent and began operating a foster home for sexually aggressive teenagers in April 1991. As the foster parent, Mr. Troyer was required to make sure the home ran smoothly, to ensure 24-hour supervision of the children in his care, and to keep in regular contact with each child's caseworker, corrections officer, guardian ad litem, therapists and teachers. As compensation/reimbursement for the care of the children placed in his home, Mr. Troyer received regular foster care payments per child, as well as per child payments for the specialized care provided in his home.

The State did not determine the daily routine for the children placed in the Troyer home or otherwise become involved in the day-to-day operation of the foster home. However, because of the exceptional needs of the children placed in the Troyer foster home, and because funds were available to aid in the placement and treatment of these children, the State paid for sex offender training for Mr. Troyer and others who worked in his foster home. The State paid for the installation of an alarm system. The State also agreed to pay $7 per hour to individuals hired by Mr. Troyer as "trackers" to provide for the 24-hour supervision of each child placed in the foster home.

One of the trackers hired by Mr. Troyer in April 1991 was Plaintiff DeWater. As a tracker, Ms. DeWater was supervised by Mr. Troyer. Her work schedule was set by Mr. Troyer, and Mr. Troyer had the sole authority to direct her work and to terminate her job as a tracker. However, Mr. Troyer did not pay Ms. DeWater's wages. Instead, Ms. DeWater submitted vouchers for payment to Mr. Troyer who forwarded them upon approval to the State. The State paid Ms. DeWater directly. No deductions for taxes, social security or other expenses were taken from the payments made to Ms. DeWater or to Mr. Troyer.

No employee benefits were paid by the State for either Ms. DeWater or Mr. Troyer.[3]

During her tenure as a tracker for the Troyer foster home, Ms. DeWater had no contact with any State employee involved in the licensing of the foster home or involved in approving or making payments for services, including those of the trackers, at the foster home.

Ms. DeWater alleges that while she was working as a tracker at the Troyer foster home, she was subjected to sexual harassment by John Troyer. Mr. Troyer and other trackers working at the foster home during the same period of time dispute Ms. DeWater's statements. Ms. DeWater did not inform anyone at the State about the alleged harassment but argues that the State had notice of the harassment or its potential because the State had previously been informed about an incident at Mr. Troyer's former place of employment.[4]

In late 1991, Mr. Troyer terminated his foster license agreement with the State. One of the trackers at the foster home assumed the duties of foster parent.

The record is not clear as to the reasons for Ms. DeWater's termination from her employment, nor as to whether she resigned or was fired. In any event, Ms. DeWater's association with the Troyer foster home ended on December 26, 1991.

Ms. DeWater then filed a complaint for damages against the State and Mr. Troyer alleging sexual harassment,

---

[3]The nature of Ms. DeWater's employment or contractual relationship with Mr. Troyer is not before us in this case. An issue of fact remains with respect to that relationship which must be determined by the trier of fact. It is only the status of Mr. Troyer that determines the State's liability in this case; we therefore do not consider the nature of the relationship that Ms. DeWater had with the State.

[4]In December 1990, Mr. Troyer was working at a center for emergency counseling and placement of teenagers in Spokane. During that month he is alleged to have made a sexually inappropriate comment to a social worker in the presence of a teenage client. The social worker reported the incident and Mr. Troyer was reprimanded. At about the time Mr. Troyer's application for a foster home license was being considered, the incident was mentioned to a supervisor at the State.

wage discrimination, retaliation, and failure to remit wages and other money due.

The State moved for summary judgment asking the trial court to rule as a matter of law that the State was not vicariously liable for the allegedly discriminatory conduct of Mr. Troyer. Ms. DeWater filed a cross motion for summary judgment.

The trial court granted the State's motion after finding as a matter of law that Mr. Troyer, as a licensed foster parent, was an independent contractor of the State.

Ms. DeWater appealed, and we directed that the appeal be transferred from the Court of Appeals for argument in this court.

## ISSUE

Is the State vicariously liable for the discriminatory acts of a licensed foster parent toward a worker in the foster parent's home?

## ANALYSIS

■ This is an appeal from an order granting summary judgment. Review is therefore de novo and the court engages in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); *Hiatt v. Walker Chevrolet Co.*, 120 Wn.2d 57, 65, 837 P.2d 618 (1992). The court must decide whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. *Fahn v. Cowlitz County*, 93 Wn.2d 368, 373, 610 P.2d 857 (1980). Where there is no dispute as to any material fact, summary judgment should be granted. CR 56(c); *Hiatt*, 120 Wn.2d at 65-66.

We do not consider the merits of Ms. DeWater's underlying claims of sexual harassment and wage discrimination. The only issue before us is whether the State may be vicariously liable for the actions of a licensed foster par-

ent toward persons working in the foster home. The facts with respect to that limited issue are not in dispute.

## Sexual Harassment in Employment

Sex discrimination in employment is prohibited by this state's law against discrimination. RCW 49.60 declares the right to be free from discrimination on the basis of race, creed, color, national origin, sex, marital status, age or disability to be a civil right. RCW 49.60.010; RCW 49.60.030(1).

■ RCW 49.60.180(3) provides that it is an unfair practice for an employer to "discriminate against any person in compensation or in other terms or conditions of employment because of . . . sex." This court has interpreted this section of the statute as prohibiting sexual harassment in employment. In *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 693 P.2d 708 (1985), the court held that allegations that an employer implicitly, but effectively, made the endurance of sexual intimidation a term or condition of employment are actionable under RCW 49.60. The court stated:

> Sexual harassment as a working condition unfairly handicaps an employee against whom it is directed in his or her work performance and as such is a barrier to sexual equality in the workplace.

*Glasgow*, 103 Wn.2d at 405. *See also Payne v. Children's Home Soc'y*, 77 Wn. App. 507, 511, 892 P.2d 1102, *review denied*, 127 Wn.2d 1012 (1995).

Sexual harassment claims are generally categorized as "quid pro quo harassment" claims or "hostile work environment" claims. *Payne*, 77 Wn. App. at 511 n.2.

In a quid pro quo harassment claim, an employee seeks damages from an employer for a supervisor's or the employer's extortion or attempted extortion of sexual favors in exchange—quid pro quo—for a job or job benefit. *Glasgow*, 103 Wn.2d at 405; *Thompson v. Berta Enters.*,

*Inc.*, 72 Wn. App. 531, 536, 864 P.2d 983, *review denied*, 124 Wn.2d 1028 (1994). An employer is strictly liable for quid pro quo harassment perpetrated by supervisory personnel who have actual or apparent authority to make employment decisions on behalf of the employer. *Thompson*, 72 Wn. App. at 538-39

Although Ms. DeWater's brief refers to a quid pro quo claim, her complaint does not allege quid pro quo harassment and the record on appeal does not support such a claim. Ms. DeWater alleges only a hostile work environment.

■■ To establish a hostile work environment case, the employee must prove (1) the harassment was unwelcome, (2) the harassment was because of sex, (3) the harassment affected the terms or conditions of employment, and (4) the harassment is imputed to the employer. *Glasgow*, 103 Wn.2d at 406-07. Only the fourth element is at issue in this appeal; that is whether the alleged harassment can be imputed to the State—as employer or as principal of an independent contractor. *Glasgow* held that where an owner, manager, partner or corporate officer personally participates in the harassment, this fourth element is met by proof of management status. *Glasgow*, 103 Wn.2d at 407. In instances where the person harassing the worker is not in management, the employer is not held vicariously liable unless the plaintiff shows that the person committing the harassment is an employee and

> that the employer (a) authorized, knew, or should have known of the harassment and (b) failed to take reasonably prompt and adequate corrective action. This may be shown by proving (a) that complaints were made to the employer through higher managerial or supervisory personnel or by proving such a persuasiveness of sexual harassment at the workplace as to create an inference of the employer's knowledge or constructive knowledge of it and (b) that the employer's remedial action was not of such nature as to have been reasonably calculated to end the harassment.

*Glasgow*, 103 Wn.2d at 407.

Ms. DeWater alleges that Mr. Troyer was the "director" of the State's "Sexually Aggressive Youth Program" and therefore was a manager for the State. In Ms. DeWater's view, the State is thus liable for his discriminatory conduct. Alternatively, she alleges that if Mr. Troyer is a supervisor, then the State knew or should have known of the hostile work environment because it had notice of an inappropriate sexual comment made to a caseworker at Mr. Troyer's previous place of employment.

## Nature of the Relationship Involved

There is no factual basis for Ms. DeWater's contention that Mr. Troyer was the "director" of the State's "Sexually Aggressive Youth Program." The record and legislation show that the term "sexually aggressive youth" was applied to a particular fund available to pay for services for high risk, sexually aggressive adolescents. The services were in the nature of placement and treatment, and no "program" was developed or staffed by the State to administer the funds or to provide the services. *See* RCW 74.13.075-.077. Mr. Troyer was a foster parent who operated a foster home for children eligible for services paid for in part with funds designated for services provided to sexually aggressive youths.

The State maintains that Mr. Troyer also was not an employee, but instead, as a licensed foster parent, was an independent contractor of the State.

The relationship of a foster parent to the State is unique and is difficult to fit within the definition of either "employee" or "independent contractor." The foster family home must be licensed. RCW 74.15.040. The foster parent is paid as a "vendor" of goods and services. *See* RCW 43.20A.020(5). Generally, foster care payments are not considered as income for income tax purposes. 26 U.S.C. § 131 (1994). The foster parent payments are considered reimbursement for child care, rather than payment of wages.

In larger foster homes, where the foster parent hires and supervises others who are paid by the State to work in the foster home, we deem it necessary, for purposes of applying the law against discrimination, to characterize the nature of the relationship between the foster parent and the State as either a contractual or an employment relationship.

■ A principal generally is not vicariously liable for the acts of an independent contractor. *Phillips v. Kaiser Aluminum & Chem. Corp.*, 74 Wn. App. 741, 749, 875 P.2d 1228 (1994); 41 Am. Jur. 2d *Independent Contractors* § 24, at 774 (1968). Further, a principal is not generally liable for injuries to the employees of an independent contractor. *Tauscher v. Puget Sound Power & Light Co.*, 96 Wn.2d 274, 277, 635 P.2d 426 (1981); *Kessler v. Swedish Hosp. & Med. Ctr.*, 58 Wn. App. 674, 678-79, 794 P.2d 871 (1990). Vicarious liability does arise, however, where the person whose actions cause injury is an employee or, if an independent contractor, where the principal retains the right to control the manner and means of work. *Kessler*, 58 Wn. App. at 679.

Here, the State may be held vicariously liable if the foster parent is an employee of the State. However, if the foster parent is an independent contractor, the State would not be liable for the discriminatory acts of the foster parent unless the State has the right to control the manner in which the foster home is operated.

RCW 49.60 does not define "employee" but, instead, states that the term "does not include any individual employed by his or her parents, spouse, or child, or in the domestic service of any person." RCW 49.60.040(4). Plaintiff DeWater argues that the only persons excluded from the term are those listed in the statute and that an independent contractor is therefore an "employee" for purposes of the discrimination statute. We considered a similar argument in *Marquis v. City of Spokane*, 130 Wn.2d 97, 922 P.2d 43 (1996). In *Marquis* we recognized an ambiguity in the statutory term "employee" and acknowledged the

common law distinction between employees and independent contractors. We also relied on a part of WAC 162-16--170 in interpreting the scope of the law against discrimination. We again turn to that regulation in this case.

WAC 162-16-170 sets forth a number of factors to be applied when determining whether an individual is an employee or an independent contractor. The regulation provides in relevant part:

Employee distinguished from independent contractor. (1) Purpose of section. RCW 49.60.180 defines unfair practices in employment. A person who works or seeks work as an independent contractor, rather than as an employee, is not entitled to the protection of RCW 49.60.180. This section outlines the standards that we will use to determine whether a person is an employee as distinguished from an independent contractor for the purpose of entitlement to the protection of RCW 49.60.180.

(2) Rights of independent contractor. While an independent contractors [sic] does not have the protection of RCW 49.60.180, the contractor is protected by RCW 49.60.030(1) from discrimination because of race, creed, color, national origin, sex, handicap, or foreign boycotts. The general civil right defined in RCW 49.60.030(1) is enforceable by private lawsuit in court under RCW 49.60.030(2) but not by actions of the Washington state human rights commission.

(3) General approach. We will determine whether a person is an employee or an independent contractor on the basis of general common law principles, taking into account the economic realities of the situation and purposes of the law against discrimination.

(4) Working presumptions. When any two of the following indications of employment are present, the worker will be presumed to be an employee unless the person who claims that the worker is not an employee presents evidence requiring the consideration of other factors:

(a) The purchaser of work in fact controls the manner and means of performance of the work.

(b) The worker is paid on the basis of time worked (hourly, monthly, etc.).

(c) The worker is treated as an employee for tax purposes.

The presumption does not apply to the foster parent. The State sets forth certain standards for licensing a foster home and requires general compliance with certain standards, but it does not control the manner and means of operating the home. The foster parent is paid per child, rather than for time worked; and the State treats foster parents as vendors, not employees, for tax purposes.

The regulation continues:

(5) Full analysis. When a full analysis is required, we will consider all the relevant facts, particularly those bearing on the following factors. No one factor is determinative, but the most important is the extent to which the purchaser of work controls the manner and means of performance of the work.

(a) Control. An employment relationship probably exists where the purchaser of work has the right to control and direct the work of the worker, not only as to the result to be achieved, but also as to the details by which the result is achieved.

(b) The kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision. . . .

(c) The skill required in the particular occupation. . . .

(d) Whether the purchaser of the work or the worker furnishes the equipment used and the place of work. . . .

(e) The length of time during which the person has worked or the length of time that the job will last. . . .

(f) The method of payment, whether by time or by the job. . . .

(g) Whether the work relationship is terminable by one party or both parties, with or without notice and explanation. . . .

(h) Whether annual leave is afforded. . . .

(i) Whether the work is an integral part of the business of the purchaser of it. . . .

(j) Whether the worker accumulates retirement benefits. . . .

(k) Whether with respect to the worker the purchaser of work pays taxes levied on employers, such as the social security tax, unemployment compensation tax, and worker's compensation tax, or withholds federal income tax. . . .

(l) Whether the worker treats income from the work as salary or as business income. . . .

(m) Whether with respect to the worker the purchaser of work keeps and transmits records and reports required of employers, such as those required under the worker's compensation act.

(n) The intention of the parties. . . .

(6) Burden of persuasion. The burden of persuasion that a person claiming the protection of RCW 49.60.180 is or would be an independent contractor is on the person making the claim.

Under the WAC regulation, and under the common law, the key to determining whether the relationship is that of employer/employee or of principal/independent contractor is an assessment of the employer/principal's right to control the manner of doing the work involved. *See Fardig v. Reynolds,* 55 Wn.2d 540, 544, 348 P.2d 661 (1960); *Phillips,* 74 Wn. App. at 749 n.23.

■ In this case there is no employee/employer relationship primarily because there is no right to control the daily actions of the foster parent and thus no ability to supervise or interfere with the day-to-day interaction between a foster parent and those working in the foster home. The State could revoke a foster parent's license and remove foster children from the home, but it would have no right to otherwise "control" the actions of the foster parent. A foster parent is therefore not a state employee.

■ At most, the foster parent is an independent contractor for the State. A principal may be vicariously liable for the acts of its independent contractor if the principal has

retained the *right to control* the manner of doing the work and the means by which the result is to be accomplished. *Fardig*, 55 Wn.2d at 544; *Phillips*, 74 Wn. App. at 749 n.23.

The State has not retained such control in the foster family setting even where, as here, the foster home is a specialized home and is highly structured for the safety and treatment of the children placed there. Mr. Troyer had complete authority to hire, fire and supervise the trackers who worked in his home. He set their schedules and directed their work. The trackers had no contact with any state agent who had supervisory duties over the foster home.

Although the trackers were paid by the State, they submitted vendor vouchers to Mr. Troyer to approve and then forward on to the State for payment.

## CONCLUSION

 Based on the record on appeal, the State did not exercise, and did not have the right to exercise, the degree of control over the Troyer foster home or its trackers which is necessary to hold the State vicariously liable for Mr. Troyer's alleged discriminatory acts.

This determination is consistent with decisions of most courts considering similar issues in other jurisdictions. *See, e.g., Mitzner v. State*, 257 Kan. 258, 891 P.2d 435 (1995) (noting that a foster parent's status does not actually fit within either term of employee or independent contractor, the court held an individual does not become a state employee by becoming a licensed foster parent and if the choice is limited status as an employee or independent contractor, the latter is the appropriate categorization of a foster parent); *District of Columbia v. Hampton*, 666 A.2d 30 (D.C. 1995) (governmental entity cannot be held vicariously liable for the acts of a foster parent); *Stanley v. State Indus., Inc.*, 267 N.J. Super. 167, 630 A.2d 1188 (1993) (foster parents are not state employees or agents; a contrary determination would not be in the public interest, nor in

the interest of children who need homes as it would place an intolerable burden upon the state); *Kern v. Steele County*, 322 N.W.2d 187 (Minn. 1982) (foster parents are not employees); *Simmons v. Robinson*, 305 S.C. 428, 409 S.E.2d 381 (1991) (foster parent was a licensee rather than an employee or independent contractor).

Affirmed.

DURHAM, C.J., DOLLIVER, SMITH, JOHNSON, ALEXANDER, and TALMADGE, JJ., and PEKELIS, J. Pro Tem., concur.

MADSEN, J., concurs in the result.