IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SNAP! MOBILE, INC., a Delaware corporation,<br><br>             Appellant,<br><br>        v.<br><br>MICHAEL ARGYROU, an individual; LEERA KPEA, an individual; BRIAN LEE, an individual; LEIGHTON RUSH, an individual; MARCUS THORNTON, an individual; TRAVIS TINER, an individual; JAY WOODWORTH, an individual,<br><br>             Respondents,<br><br>ALEX CARDENAS, an individual; CHRIS REINHARDT, an individual; DYLAN REDA, an individual,<br><br>             Defendants. | No. 83766-4-I<br><br>DIVISION ONE<br><br>ORDER DENYING MOTION FOR RECONSIDERATION, DENYING MOTION TO PUBLISH, AND AMENDING OPINION |

Respondents Michael Argyrou, Leera Kpea, Brian Lee, Leighton Rush, Marcus Thornton, Travis Tiner and Jay Woodworth filed a motion for reconsideration and a motion to publish the opinion filed on December 26, 2023 in the above case. Appellant Snap! Mobile filed an answer. A majority of the panel has determined that the motions should be denied but the opinion amended.

Now, therefore, it is hereby

ORDERED that the motion for reconsideration and motion to publish are denied. The opinion filed on December 26, 2023 shall be amended as follows:

1. On Page 18, the following sentences:

   In this case, Snap claims to seek damages for lost profits caused by Respondents' running additional fundraising campaigns after December 2020, as well as the "cost of assembled workforce." Snap's expert explained, "The cost of the assembled work represents Snap's recovery for investment in recruiting and training the Sales Reps. The earnings relating to lost profits are what those Sales Reps are able to generate AFTER they have received this training."

   shall be deleted and replaced with the following:

   In this case, Snap initially sought damages for lost profits caused by Respondents' running additional fundraising campaigns after December 2020, as well as the "cost of assembled workforce." Prior to the summary judgment hearing, Snap withdrew its claim for workforce damages. As to lost profits, Snap's expert explained, "The earnings relating to lost profits are what those Sales Reps are able to generate AFTER they have received this training."

2. On Page 18, the following sentence shall be deleted:

   Through these damages, Snap seeks to recoup the costs incurred to recruit and train Respondents, rather than the cost to retrain replacements for which VR and Landers were held liable in the Idaho lawsuit.

The remainder of this opinion shall remain the same.

FOR THE COURT:

_Chung, J._

_Feldman, J._          _Hazelrigg, ACJ_

2

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

SNAP! MOBILE, INC., a Delaware corporation,

                Appellant,

                v.

MICHAEL ARGYROU, an individual; LEERA KPEA, an individual; BRIAN LEE, an individual; LEIGHTON RUSH, an individual; MARCUS THORNTON, an individual; TRAVIS TINER, an individual; JAY WOODWORTH, an individual,

                Respondents,

ALEX CARDENAS, an individual; CHRIS REINHARDT, an individual; DYLAN REDA, an individual,

                Defendants.

No. 83766-4-I

DIVISION ONE

UNPUBLISHED OPINION

CHUNG, J. — Snap! Mobile, Inc. (Snap) lost many former employees and accounts to upstart rival Vertical Raise, LLC (VR). Snap sued VR and its founder Paul Landers in Idaho for tortious interference with contract, unfair competition, and misappropriation of trade secrets, resulting in a monetary judgment and permanent injunction in Snap's favor. In this lawsuit, Snap sued several of its former employees in King County for breach of restrictive covenants in their employment agreements. Relying on the Idaho judgment, the former employees

moved for summary judgment and dismissal on their affirmative defenses of claim preclusion (res judicata) and issue preclusion (collateral estoppel). The trial court concluded both doctrines applied and granted summary judgment in the former employees' favor.

Snap appeals the dismissal of its claims. Respondents, the former employees, cross-appeal the denial of their motion to amend and their fee award. We affirm the trial court's denial of Respondents' motion to amend. However, we conclude that Snap's claims are not precluded under the doctrines of claim preclusion or issue preclusion. Therefore, we reverse the summary judgment order and remand for further proceedings.

FACTS

Snap, founded in 2013, is a Delaware corporation with its principal place of business in King County. Snap developed an online platform to help teams and schools raise money through online donation campaigns. Snap employs area sales representatives across the country who serve as the primary contacts for its customers. The sales representatives were independent contractors until Snap began converting them to W-2 employees in June 2017.

The sales representatives who chose to become employees signed a sales representative agreement. The agreement included a forum selection clause agreeing to jurisdiction in King County, Washington and resolution under Washington law for any disputes related to or arising out of the agreement, with the employee consenting to personal jurisdiction in King County Superior Court.

2

Additionally, the agreement included several provisions in a section entitled "Restrictive Covenants" aimed at protecting Snap's interest in its "Proprietary and Trade Secret Information." The restrictive covenants consisted of a non-compete clause, a non-acceptance of business clause, and a non-solicitation of business clause for the specific geographic area where the employee performed services for Snap as well as "any geographic area about which Employee learned Confidential, Proprietary, and Trade Secret Information." The agreement also prohibited solicitation of other Snap employees. All restrictions had a duration of 18 months after termination of employment.

VR entered the online fundraising industry in 2018, five years after Snap. VR began hiring Snap sales representatives as independent contractors, and Chief Executive Officer (CEO) Paul Landers encouraged them to use Snap's client lists and other confidential customer information for VR's benefit. In October 2018, Snap sued two former employees and VR to enforce the restrictive covenants in the agreement in King County. See Snap! Mobile v. Clay, et al., Case No. 18-2-26321-2 SEA. VR successfully moved to dismiss for lack of personal jurisdiction, as its place of business was in Idaho, and the lawsuit proceeded against only the former employees.[1] In December 2019, Snap brought a complaint against VR in Idaho for tortious interference with contract, misappropriation of trade secrets, and unfair competition, and subsequently

---

[1] The record on appeal references preliminary injunctions entered against former Snap employees Bradly Clay and Joseph Sanford, but contains only the order regarding Clay.

amended to add Landers as a defendant. See Snap! Mobile, Inc. v. Vertical Raise, LLC, Case No. CV28-19-8796 (Kootenai County, Idaho) ("Idaho lawsuit").

Soon after, Snap filed this lawsuit for breach of contract, seeking damages and injunctive relief against ten other former Snap employees—Michael Argyrou, Alex Cardenas, Leera Kpea, Brian Lee, Chris Reinhardt, Leighton Rush, Marcus Thornton, Travis Tiner, Dylan Reda, and Jay Woodworth (collectively, Respondents). The Respondents had all signed the Snap sales representative agreement with its restrictive covenants and had subsequently joined VR as independent contractors. None of these former Snap employees was a resident of Washington State. Snap brought the lawsuit in King County, Washington, pursuant to the forum selection clause in the sales representative agreement.

Snap continued to pursue VR and Landers in the Idaho lawsuit. In December 2020, the Idaho court granted Snap's motion for a preliminary injunction, enjoining VR, Landers, "and anyone acting in concert or on behalf of Vertical Raise and Landers" from engaging in certain activities, including soliciting, accepting, or transacting business with Snap customers and business partners served by former Snap employees, aiding former Snap employees in breaching their sales representative agreements, compensating former Snap employees for transacting business with former Snap clients in the geographic area they had served for Snap, and obtaining or using Snap's confidential, trade secret information.

Meanwhile, in King County, Respondents answered Snap's complaint, alleging several affirmative defenses, including hostile work environment leading to the Respondents' departure from the company and constructive discharge. In April 2021, Respondents filed a motion for summary judgment alleging the restrictive covenants were void as a matter of law and unenforceable. The same day, Snap filed a motion for summary judgment asking the court to strike the two affirmative defenses based on hostile work environment under CR 12(f), find the restrictive covenants valid and enforceable as a matter of law, and determine that Respondents breached the covenants. The trial court granted Snap's request to strike Respondents' hostile workplace affirmative defenses but denied summary judgment on all other issues. The court also denied the Respondents' motion for summary judgment.

Back in Idaho, Snap moved for partial summary judgment on its claims against VR and Landers for tortious interference with contract and misappropriation of trade secrets. In June 2021, the court determined that Snap had established a prima facie case of tortious interference and VR and Landers failed to provide any evidence of justification. The court concluded that VR and Landers personally were liable for tortious interference as a matter of law. The court also held that VR and Landers misappropriated Snap's trade secrets. The court granted partial summary judgment on the two claims.

The remaining issues went to trial, and a jury awarded Snap $750,000 in economic damages for unjust enrichment, $150,000 in punitive damages from

VR, and $100,000 in punitive damages from Landers individually. Snap moved for additur, *i.e.*, additional damages, and received an additional $410,021 for VR's unjust enrichment and $900,000 for the cost to Snap for workforce replacement. In September 2021, the Idaho court granted a permanent injunction against VR, Landers, "and their employees, independent contractors, servants, and agents, and anyone acting in concert or on behalf of Vertical Raise, LLC and Paul Landers," enjoining them from the same actions outlined in the preliminary injunction for 18 months.

During trial in the Idaho lawsuit, non-party and former Snap employee Paul Croghan appeared as a witness. While he was in Idaho to testify, Snap served him with a motion for contempt for violating the preliminary injunction.[2] The Idaho court dismissed the contempt proceedings against Croghan, concluding the preliminary injunction was overbroad and lacking in specificity such that it did not provide Croghan with proper notice of the scope of prohibited conduct. In addition, the trial court determined it lacked personal jurisdiction over Croghan.[3]

---

[2] Snap also filed multiple motions for contempt against VR/Landers for failing to abide by the preliminary injunction. The court subsequently dismissed Snap's motions for contempt against VR/Landers on due process grounds.

[3] The court concluded it lacked personal jurisdiction because Snap had failed to properly serve Croghan by violating the well-established privilege that a witness coming from another state or jurisdiction is exempt from service of process while in court. The court noted that it also lacked personal jurisdiction over Croghan under the Idaho long-arm statute, because Croghan worked in California, had not transacted business in Idaho, did not have minimum contacts with Idaho, and exercising jurisdiction did not comport with due process.

Back in King County, Respondents filed a motion to amend their answer to add affirmative defenses including res judicata, collateral estoppel, and material breach "based on harassment that the Defendants experienced in the workplace and that the hostile work environment was a material breach of the Defendants' Sales Representative Agreements and employee handbook." The court granted Respondents' motion to amend to add affirmative defenses of collateral estoppel, res judicata, unjust enrichment, offset, and unconscionability, but denied the material breach defense because it was identical to the previously dismissed hostile work environment affirmative defenses. Two months later, Respondents moved for summary judgment on their affirmative defenses that Snap's claims were precluded under the doctrines of res judicata and collateral estoppel based on the entry of the final judgment in the Idaho lawsuit against VR and Landers. The trial court granted Respondents' motion for summary judgment, concluding Snap's claims were precluded by both collateral estoppel and res judicata. Under the terms of the agreement, Respondents requested and received attorney fees and costs.

Snap appeals the court's dismissal of its breach of contract claim. Respondents cross-appeal the denial of the motion to amend and the amount of attorney fees awarded.

DISCUSSION

I.    Summary Judgment Dismissal of Snap's Claims

The trial court dismissed Snap's claims on summary judgment, citing both collateral estoppel and res judicata. We review orders on summary judgment de novo. Kim v. Lakeside Adult Fam. Home, 185 Wn.2d 532, 547, 374 P.3d 121 (2016). We construe evidence and reasonable inferences in the light most favorable to the nonmoving party. Id. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998) (citing CR 56(c)).

As an initial matter, for clarity and consistency, in keeping with the more modern lexicon, we refer to res judicata as "claim preclusion" and collateral estoppel as "issue preclusion," unless referencing specific statements by a court or the parties.[4] Issue preclusion and claim preclusion "are equitable doctrines that preclude relitigation of already determined causes." Weaver v. City of Everett, 194 Wn.2d 464, 472-73, 450 P.3d 177 (2019). The two doctrines share the goal of judicial finality and promoting judicial economy. Id. at 473. Claim preclusion refers to restrictions on relitigating the same claim or cause of action. 14A DOUGLAS J. ENDE, WASHINGTON PRACTICE: CIVIL PROCEDURE § 35:20, at 552

---

[4] As the U.S. Supreme Court has noted, the terms "claim preclusion" and "issue preclusion" "have replaced a more confusing lexicon. Claim preclusion describes the rules formerly known as 'merger' and 'bar,' while issue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.' " Taylor v. Sturgell, 553 U.S. 880, 892 n.5, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008) (citing Migra v. Warren City Sch. Dist. Bd. of Ed., 465 U.S. 75, 77, n.1, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984)).

(3d ed. 2018). Claim preclusion "bars litigation of *claims* that were brought or might have been brought in a prior proceeding." Weaver, 194 Wn.2d at 473. By contrast, "instead of preventing a second assertion of the same claim or cause of action, [issue preclusion] prevents a relitigation of a particular issue in a later proceeding involving the same parties." 14 ENDE, supra, § 35:32, at 595. Whether claim preclusion or issue preclusion apply are questions of law reviewed de novo. Weaver, 194 Wn.2d at 473.

The parties address the elements of claim preclusion and issue preclusion together. However, because the doctrines and their elements are different, we address them separately.

### A.    Claim Preclusion (Res Judicata)

Claim preclusion prevents relitigation of an entire claim when a prior proceeding involving the same parties and issues culminated in a judgment on the merits.[5] Weaver, 194 Wn.2d at 480. In addition to the threshold requirement of a final judgment on the merits in the prior suit, the party asserting claim preclusion has the burden of proof to establish that the prior action and the

---

[5] Without application of claim preclusion, the fact that VR and Landers were held liable for injury to Snap based on Respondents' actions will not necessarily preclude claims against Respondents for the same conduct. As RESTATEMENT (SECOND) OF JUDGMENTS § 49 (Am. Law Inst. 1982) states, "A judgment against one person liable for a loss does not terminate a claim that the injured party may have against another person who may be liable therefor." Comment a to § 49 explains,

> When the claimant thus brings consecutive actions against different persons liable for the same harm, the rendition of the judgment in the first action does not terminate the claims against other persons who may be liable for the loss in question. The judgment itself has the effect of officially confirming the defendant's obligation to make redress, an obligation which under the substantive law co-exists with that of the other obligor. No reason suggests itself why the legal confirmation of one obligation should limit or extinguish the other.

challenged action have "concurrence of identity" in four areas: (1) subject-matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made. Id. All four elements must be satisfied to establish claim preclusion. Hisle v. Todd Pac. Shipyards Corp., 151 Wn.2d 853, 866, 93 P.3d 108 (2004).

In disputing claim preclusion, Snap focuses on whether the two actions involve the same persons and parties, asserting that Respondents, as independent contractors, cannot be in privity with VR and Landers. Respondents are the same party[6] for claim preclusion purposes if they are in privity. Feature Realty, Inc. v. Kirkpatrick & Lockhart Preston Gates Ellis, LLP, 161 Wn.2d 214, 224, 164 P.3d 500 (2007). " 'Privity within the meaning of the doctrine of [claim preclusion] is privity as it exists in relation to the subject matter of the litigation, and the rule is construed strictly to mean parties claiming under the same title. It denotes mutual or successive relationship to the same right or property.' " Loveridge v. Fred Meyer, Inc., 125 Wn.2d 759, 764, 887 P.2d 898 (1995) (quoting Owens v. Kuro, 56 Wn.2d 564, 568, 354 P.2d 696 (1960)). Privity is also established when a nonparty is in actual control of the litigation or substantially participates in it. Loveridge, 125 Wn.2d at 764. A nonparty may also be in privity

---

[6] Commentators have noted that the element "quality of the persons for or against whom the claim is made" rarely adds any distinct analysis, and courts either conclude the third element, identity of parties, satisfies the quality of persons element, or collapse the two into one test. Kathleen M. McGinnis, Revisiting Claim and Issue Preclusion in Washington, 90 Wash. L. Rev. 75, 105 (2015); Landry v. Luscher, 95 Wn. App. 779, 785, 976 P.2d 1274 (1999) (quoting Philip A. Trautman, Claim and Issue Preclusion in Civil Litigation in Washington, 60 Wash. L. Rev. 805, 820 (1985)) ("[o]nly if there is identity of parties, including the privity concept, need one consider the fourth element, identify in the quality of the persons for or against whom the claim is made.").

with a party if that party adequately represented the nonparty's interests in the prior proceeding. Feature Realty, 161 Wn.2d at 224.

An employer-employee relationship may be sufficient to establish privity for claim preclusion purposes. Loveridge, 125 Wn.2d at 764. For example, in Feature Realty, a former client filed and dismissed two legal malpractice lawsuits against a law firm and one of its attorneys in California. Id. at 218. The second dismissal amounted to an adjudication on the merits under CR 41(a)(4). Id. at 224. When Feature Realty filed a third lawsuit against a Washington attorney at the firm who had not been party to the prior two lawsuits, the court determined the attorney was in privity with the law firm and, therefore, entitled to the preclusive effects of claim preclusion. Id. at 224-25. Similarly, in Ensley v. Pitcher, an injured driver sued a drunk driver and the tavern that served her alcohol. 152 Wn. App. 891, 895, 222 P.3d 99 (2009). After partial summary judgment resulted in dismissal of claims against the tavern, Ensley brought the same claims against the bartender. Id. at 894. Although the bartender had not been named in the original suit, there was identity of the parties because the employer's liability turned solely on vicarious liability for the bartender's actions. Id. at 903.

Here, however, Respondents were not VR employees. Rather, Respondents agreed to work for VR as independent contractors.[7] Unlike in an

---

[7] The early VR independent contractor agreement did not provide any details about the amount of independence allotted to the contractor and control reserved to VR. A later revision of

employer-employee relationship, a principal is generally not liable for the acts of an independent contractor. DeWater v. State, 130 Wn.2d 128, 137, 921 P.2d 1059 (1996). Therefore, unlike in Ensley, vicarious liability cannot serve as the foundation for privity between Respondents and VR and Landers.

Despite the nature of the principal-independent contractor relationship, Respondents argue that "[o]ur courts do not distinguish between employees and independent contractors regarding [the] question of privity with their employer for activities undertaken within the scope of their employment." Br. of Resp't at 32. In support, Respondents cite Kuhlman v. Thomas, 78 Wn. App. 115, 118, 897 P.2d 365 (1995), which considered privity in the context of two lawsuits filed by a disgruntled employee. After being disciplined for harassing female co-workers, Kuhlman sued his employer, claiming violation of due process and breach of contract. Id. at 118-19. Kuhlman then brought the same claims against officers and employees of his employer. Id. at 118. After the original lawsuit against the employer was dismissed with prejudice on summary judgment, the court dismissed the suit against the officers and employees as precluded under both the doctrines of claim preclusion and issue preclusion. Id. at 119. On appeal, in assessing privity, this court noted that the liability of the employer in the first suit was premised on the actions of the employees named in the second suit. Id. at 122. In defending the first suit, the employer protected the interests of the

---

the independent contractor agreement provided specifics about the contractor as an independent contractor.

12

employees. <u>Id.</u> Therefore, we determined the parties were "sufficiently the same, if not identical." <u>Id.</u>

In contrast, here, in the Idaho case, VR CEO Landers disclaimed responsibility for the actions of former Snap employees, such as Respondents, testifying, "[W]hen we hire guys they're independent contractors. They go and get the business. We just set them up, train them on the software, and they go get the business." Similarly, testifying about discussions VR had with sales representatives about the preliminary injunction, Landers noted, "[T]hey're independent contractors. We told them not to violate this preliminary injunction," and "I thought they would follow my directions and not violate it as we told them." When asked, "Your people ran these fundraisers?" Landers replied, "Correct. These independent contractors." Landers repeatedly emphasized that the former Snap employees were independent contractors, not VR employees. Rather than defend their interests, he distanced himself from their actions. Landers/VR and Respondents do not have a commonality of interests that would make them "sufficiently the same."

Without a commonality of interest, or an employer-employee relationship that would lead to vicarious liability, the Respondents are not in privity with Landers or VR. Therefore, Snap's current lawsuit against Respondents lacks a "concurrence of identity" of "persons or parties" with Snap's prior case against Landers and VR. As a result, Respondents cannot establish one of the four elements required for claim preclusion. Claim preclusion does not apply to

13

preclude Snap's claims against Respondents, and the trial court erred by dismissing the case on this basis.

### B.     Issue Preclusion (Collateral Estoppel)

Snap claims that the court "inverted preclusion rules" by holding it, rather than Respondents, estopped from contesting their liability for breach of contract. Issue preclusion precludes relitigation when an issue of ultimate fact has been determined by a valid and final judgment, such that the issue cannot be litigated between the same parties in any future lawsuit. Weaver, 194 Wn.2d at 473. "Application of [issue preclusion] is limited to situations where the issue presented in the second proceeding is identical in all respects to an issue decided in the prior proceeding." Lemond v. Dep't of Licensing, 143 Wn. App. 797, 805, 180 P.3d 829 (2008).

According to Snap, "[t]he logical consequence of giving the Idaho judgment preclusive effect would be to bind Respondents to the Idaho jury's finding that Vertical Raise and Paul Landers facilitated their breaches of contract and that they are jointly liable for the damages flowing from their breaches."[8] Respondents acknowledge they "work for Vertical Raise and just as in Idaho, Snap's claim for damages arises from alleged violations of their Snap employment agreements while working for Vertical Raise." But they then argue

---

[8] Despite this possibility, Snap did not move the trial court to apply issue preclusion against Respondents on the legal issue of breach of their contract.

that because Snap already succeeded in obtaining a judgment on the issue, it cannot now relitigate the breach of contract—including the damages award.

This argument by Respondents conflates the distinct doctrines of issue and claim preclusion. Having addressed claim preclusion above, we now focus on the *issues* in the two cases, rather than the *claims*. And based on their arguments below and on appeal, Snap and Respondents agree that both the Idaho lawsuit and the current case involve the identical issue of Respondents' breach of their Snap sales representative agreements.[9] We also agree.

In the Idaho lawsuit, the claim of tortious interference with contract required establishing (1) the existence of a contract, (2) the defendant's knowledge of the contract (3) intentional interference causing a breach of the contract, and (4) injury to plaintiff resulting from the breach. See Idaho First Nat'l Bank v. Bliss Valley Foods, Inc., 121 Idaho 266, 283-84, 824 P.2d 841 (1991). Thus, in granting Snap's motion for summary judgment on the tortious interference claim, the Idaho court determined that Snap had satisfied each of these elements, including the existence of the contracts, and that by recruiting and hiring former Snap employees, VR and Landers had engaged in "a scheme to knowingly entice Snap employees to break their contracts with Snap." The Idaho court explained that VR and Landers "actively sought out and encouraged Snap employees to breach their contracts." Thus, the Idaho court's decision to grant summary judgment against VR and Landers on liability required concluding

---

[9] Respondents characterize this as the same "cause of action" and same "right."

15

that the employees breached their contracts. As a result, the specific issues of the existence of the contracts and whether the former Snap employees breached those contracts are precluded from being further litigated.

In the present case, the breach of contract claim requires proof of three elements—the existence of a contract, its breach, and resulting damages. Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus., 78 Wn. App. 707, 713, 899 P.2d 6 (1995). While the parties agree as to the preclusive effect of the Idaho case on the first two elements, existence of the contract and breach, they disagree as to the preclusive effect on the third element, resulting damages. Snap argues Respondents are bound by the Idaho court's determination that they breached their contracts, resulting in liability for damages to be proven at trial, whereas Respondents argue Snap is barred from relitigating both liability and resulting damages. Therefore, we must consider whether issue preclusion bars Snap from litigating the issue of resulting damages in this case.

The party asserting issue preclusion as an affirmative defense has the burden of proof. Lemond, 143 Wn. App. at 805. The party asserting the defense—in this case, the Respondents—must establish four elements:

> (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom [issue preclusion] is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of [issue preclusion] does not work an injustice on the party against whom it is applied.

Weaver, 194 Wn.2d at 474. Because proof of all four elements is required, the failure to establish any one element prevents application of the doctrine. Lemond, 143 Wn. App. at 805. Additionally, "the party against whom the doctrine is asserted must have had a full and fair opportunity to litigate its case in a prior proceeding." Weaver, 194 Wn.2d at 473-74.

As discussed above, the identical issue of breach of the sales representative agreements was decided in the Idaho lawsuit. Further, the requirement of a final judgment on the issue of breach is satisfied, as the Idaho court granted summary judgment in Snap's favor on the tortious interference claim, including on the element of intentional interference causing a breach of the contract. A trial on damages resulted in a jury verdict and judgment for Snap.[10] Snap argues the injunction is unenforceable, resulting in a void judgment such that there is no final judgment on the merits. However, the Idaho judgment itself is neither unenforceable nor void.[11] The final judgment stands in the Idaho case and satisfies the second requirement for issue preclusion.

As to the third element, in the context of issue preclusion, privity requires that "the party *against whom* [*issue preclusion*] *is asserted* was a party to, or in privity with a party to, the earlier proceeding." Id. at 474 (emphasis added).

---

[10] The trial court had also granted summary judgment finding VR and Landers liable for misappropriation of trade secrets. The jury did not award any damages for the misappropriation claim. The jury did find that VR and Landers engaged in unfair competition that caused damages to Snap and awarded punitive damages.

[11] Again, Respondents conflate issue and claim preclusion. While claim preclusion requires a final judgment against the same persons or parties, issue preclusion does not.

Because it is Respondents who seek to assert the doctrine against Snap, this element is satisfied because Snap is the same party in both actions.[12]

However, the parties disagree as to whether the issue of Respondents' liability for damages for breach of contract is identical in the Idaho case and the present case. In the Idaho case, the jury found VR's and Landers's actions constituting tortious interference and unfair competition resulted in damages for unjust enrichment totaling $750,000 and awarded punitive damages against both VR and Landers. Subsequently, the Idaho trial court granted Snap's motion for additur of damages for workforce replacement through December 2020 as well as additional damages for unjust enrichment. In this case, Snap claims to seek damages for lost profits caused by Respondents' running additional fundraising campaigns after December 2020, as well as the "cost of assembled workforce." Snap's expert explained, "The cost of the assembled work represents Snap's recovery for investment in recruiting and training the Sales Reps. The earnings relating to lost profits are what those Sales Reps are able to generate AFTER they have received this training." Through these damages, Snap seeks to recoup the costs incurred to recruit and train Respondents, rather than the cost to retrain replacements for which VR and Landers were held liable in the Idaho lawsuit. Thus, the Respondents cannot establish that the issue of their liability for damages caused by their breach of contract in this case is identical to the

---

[12] The privity analysis under the doctrine of claim preclusion is different, as a claim is precluded only if there is a concurrence of identities in four areas, including "persons and parties." Weaver, 194 Wn.2d at 480.

previously litigated issue of VR's and Landers's liability for damages for tortious interference with contract. As a result, issue preclusion does not bar litigation of the issue of damages caused by Respondents' breach of the agreement.[13]

## II.     Respondents' Cross-Appeal

Respondents raise two issues on cross-appeal. They argue the trial court erred by denying their motion to amend their answer to add a material breach affirmative defense and by awarding significantly reduced attorney fees.

### A.     Motion to Amend

The trial court denied Respondents' motion to amend their answer to add the material breach affirmative defense, concluding it was identical to the previously stricken affirmative defenses. Respondents argue they should be able to argue that Snap's breach of its employee handbook relieved them of any obligation to abide by the restrictive covenants in the agreement. Snap contends that Respondents did not assign error to the trial court's order striking the original

---

[13] As to the fourth element required for application of issue preclusion, Snap argues that the trial court's ruling unjustly allows Respondents to avoid liability for breach of contract. For their part, Respondents claim that issue preclusion is not unjust because Snap chose to bring its action in Idaho and did not try to implead them into that action. But whether or not Snap could have brought such claims is not part of the analysis under the doctrine of issue preclusion, as it is for claim preclusion. Weaver, 194 Wn.2d at 481.

The parties also spar over whether Snap had a full and fair opportunity to litigate the liability of individual Respondents given the Idaho court's ruling on a contempt motion that it did not have personal jurisdiction over Croghan, an out-of-state VR independent contractor who did not have minimum contacts with the state. Additionally, Snap argues that the forum selection clause in Respondents' agreements with Snap named King County as the proper location for lawsuits arising from those contracts and, thus, would have prevented it from litigating against Respondents in the Idaho case. We need not address these arguments, as Respondents cannot establish that the identical issue of Respondents' liability for damages for breach of contract was litigated in the Idaho lawsuit.

two defenses and have failed to show how the new affirmative defense differs from those already struck. We agree with Snap.

CR 15(a) governs amendment of pleadings:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served, or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

"The touchstone for the denial of a motion to amend is the prejudice such an amendment would cause to the nonmoving party." Wilson v. Horsley, 137 Wn.2d 500, 505, 974 P.2d 316 (1999). Factors to consider when determining whether amending would cause prejudice include undue delay, unfair surprise, and jury confusion. Id. at 505-06.

The decision to allow leave to amend is within the discretion of the trial court and is reviewed for manifest abuse of discretion. Id. at 505. "The trial court's decision 'will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' " Id. (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

In their initial answer, Respondents raised several affirmative defenses, including the following:

> 2. Plaintiff's claims are barred by its own unclean hands and otherwise inequitable conduct, including that it knew or should have known that its

chief executive officer, Cole Morgan and other supervisors employed by Plaintiff, including employee Kenny Stivers, engaged in sexual harassment, discrimination, drug use, and retaliation against Answering Defendants and other Snap employees, all of which created a hostile work environment, which ultimately forced Answering Defendants to leave the company.

3. Snap's hostile work environment, including the sexual harassment, discrimination, drug use, and retaliation engaged in by Snap officers such as Morgan and Stivers, lead [sic] to the constructive discharge of Answering Defendants.

The trial court struck these two defenses on Snap's request.[14] Respondents then moved to amend to add "material breach" as an affirmative defense, explaining "Snap's material breach is based on harassment that the Defendants experienced in the workplace and that the hostile work environment was a material breach of the Defendants' sales representative agreements and employee handbook." The trial court denied the motion to add the "material breach" defense, deeming it "identical to the hostile work environment/discrimination defenses" that it had previously stricken.

As Respondents acknowledged, the newly proposed "material breach" affirmative defense was based on the hostile work environment and harassment they purported to experience while at Snap. The two prior affirmative defenses also relied on similar allegations of hostile work environment and harassment. The three defenses are different approaches to the same concept based on the same factual predicate: Snap's hostile workplace led Respondents to leave the

---

[14] On appeal, Respondents do not challenge the court's decision to strike these defenses.

company and relieved them of their obligations under the restrictive covenants in the sales representative agreement. The trial court had already rejected two forms of this constructive discharge defense. The trial court's denial of the motion to add the "material breach" defense was consistent with its prior order and was not a manifest abuse of discretion.

### B.     Attorney Fees

Under the terms of the sales representative agreements, the prevailing party is entitled to fees:

> 8. Prevailing party attorney fees, costs, and expense recovery. The court shall award the prevailing party in any dispute arising out of or related to this Agreement all its reasonable attorney's fees, expenses, and costs incurred in the dispute.

The trial court awarded Respondents attorney fees as the prevailing party below. Respondents argue the court abused its discretion in determining the amount of fees. However, because Respondents are no longer the prevailing party, we reverse the attorney fee award. Any award of fees is deferred until resolution of Snap's breach of contract claims. See Riehl v. Foodmaker, Inc., 152 Wn.2d 138, 153, 94 P.3d 930, (2004), abrogated on other grounds by Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas County, 189 Wn.2d 516, 404 P.3d 464 (2017) ("Where a party has succeeded on appeal but has not yet prevailed on the merits, the court should defer to the trial court to award attorney fees.").

### CONCLUSION

The trial court erred by applying claim preclusion (res judicata) and issue preclusion (collateral estoppel) to bar Snap's claims against Respondents in their

22

entirety. We agree with the parties that the doctrine of issue preclusion bars relitigation of the existence of the sales representative agreements and Respondents' breach of these contracts. However, the resulting damages for which Respondents are alleged to be liable are not identical to those awarded in the Idaho case. We reverse and remand for further proceedings consistent with this opinion.

_Chung, J._

WE CONCUR:

_Feldman, J._                    _Hazelrigg, ACJ_